**Robert Steven MOSHER, Petitioner,**

v.

**J. Edwin LaVALLEE, Superintendent, Clinton Correctional Facility, Dannemora, New York, Respondent.**

**No. 71 Civ. 707.**

United States District Court,
S. D. New York.

Dec. 7, 1972.

---

1. II Samuel 18:9–15.

2. Judges 16:17–19.

Michael Meltsner, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of State of New York, Albany, N. Y., for respondent; Robert S. Hammer, Asst. Atty. Gen., New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Robert S. Mosher, now petitioning this Court for a writ of habeas corpus, is presently serving a 40 to 60-year sentence of imprisonment imposed by the County Court of Westchester County, New York, on July 9, 1964.[1] Mosher was sentenced as a second felony offender on a plea of guilty to a count of armed robbery in the first degree.

Mosher urges that his plea of guilty was involuntary and both plea and sentence must be set aside. He makes two alternative contentions.

Mosher's first claim is that the County Court Judge, prior to accepting his guilty plea, promised that, if he pled guilty, he would receive a minimum sentence; he was induced by this promise to plead guilty instead of standing trial; but, that the promise was broken when the judge gave him what was tantamount to a maximum sentence.

Alternatively, Mosher claims that even if the judge did not make such a promise, his attorney assured him that the judge had promised to give him a minimum sentence if he pled guilty and that he was induced to plead guilty by such assurance, which turned out to be untrue.

Mosher's conviction and sentence were affirmed, People v. Mosher, 29 A.D.2d 549, 286 N.Y.S.2d 791 (2d Dep't, 1967), and leave to appeal to the New York Court of Appeals was denied on March 27, 1968. On July 25, 1968, Mosher brought a coram nobis proceeding in the County Court of Westchester County which raised substantially the same issues as are presented here. The County Court denied the petition without a hearing. The Appellate Division affirmed and the Court of Appeals again denied leave to appeal.

Mosher then brought the instant proceeding. In substance, the same papers were submitted on this application as had been presented to the Westchester County Court on his coram nobis application. Since there were issues of fact raised by these papers, I held an eviden-

---

1. Mosher's incarceration has not been uneventful. *See* United States ex rel. Mosher v. LaVallee, 321 F.Supp. 127 (N.D.N.Y.1970), affirmed in part and reversed in part, 460 F.2d 126 (2d Cir. 1972).

tiary hearing.[2] At the hearing, James T. Morahan, Esq., the attorney retained by Mosher's family to represent him in the case in which he pled guilty, Mosher himself, his co-defendants Bracken and Reid, Philip Parker, Esq., Bracken's attorney, and Hon. Robert J. Trainor, Justice of the New York Supreme Court, formerly Westchester County Court Judge, all testified.

The evidence before me was as follows:

Mosher and his co-defendants, Bracken and Reid, were arrested in March, 1964, for the armed robbery of the United States Post Office at Mary Knoll Seminary in Ossining, New York. Not unnaturally, the case received wide publicity.

Mosher and his co-defendants were indicted on four counts, charging (1) robbery in the first degree, (2) grand larceny, (3) second degree assault, and (4) felonious carrying of concealed, loaded firearms. All defendants initially pleaded not guilty to all counts.

On June 17, 1964, Mosher appeared before Judge Trainor and stated through counsel he wished to plead guilty to armed robbery in the first degree. Judge Trainor, in open court, asked Mosher whether any threats or promises had been made to induce him to change his plea and Mosher answered in the negative. Judge Trainor accepted the plea. His co-defendants Bracken and Reid also pled guilty to that count.

On July 9, 1964 Mosher appeared before Judge Trainor for sentence. He had previously served five years of a 10-year term on a prior conviction of armed robbery and was thus a second felony offender. Under the New York law in effect in 1964, the maximum sentence which Mosher could have received as a second felony offender on his guilty plea to armed robbery in the first degree was 60 years. Former N. Y.Penal Law, McKinney's Consol.Laws, c. 40, §§ 2125, 1941.[3] The minimum sentence which could have been imposed was 15 years. *Id.* Judge Trainor sentenced Mosher to not less than 40 nor more than 60 years, as a second felony offender. A few days after Judge Trainor sentenced Mosher, he sentenced Mosher's co-defendant Reid to 10 to 20 years, and his co-defendant Bracken to a reformatory term not to exceed 5 years.

On the morning of the day on which Mosher and his co-defendants changed their pleas, Morahan, Mosher's attorney, the Assistant District Attorney in charge of the case, the District Attorney and the attorney for the co-defendant Reid, met with Judge Trainor in his chambers. Subsequent to that meeting, Morahan and the attorneys for the other two defendants met with their clients in

---

**2.** Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir. 1963).

**3.** The State suggests that a sentence of substantially more than 60 years could have been imposed on Mosher on his plea of guilty to armed robbery because he used a gun and a car in the commission of the crime. See former N.Y. Penal Law §§ 1905, 1944. It is urged, therefore, that Mosher did not receive a maximum sentence and has no complaint.

This suggestion is plainly an afterthought and must be disregarded. It is unnecessary to consider whether or not the sentencing Court had the power to give such additional sentences on a plea to armed robbery for there is no evidence that such a possibility, if it existed at all, was ever considered by anyone involved in the case, including the judge, the prosecutor, Mosher and Morahan, or that such a possibility was a factor in Mosher's decision to plead guilty. Moreover, assuming arguendo that some additional time could have been imposed, the sentence actually imposed was plainly in practical effect a maximum sentence, both in terms of when Mosher would be eligible for parole, *see* N.Y. Correction Law § 212 (McKinney 1968), as superseded by § 212–a (McKinney's Consol. Laws, c. 43, Supp.1972); former N.Y. Penal Law § 1945(2); and his life expectancy when he was sentenced.

the detention area of the Westchester County Courthouse to discuss the plea. Mosher's contentions that his plea was involuntary are based on what occurred in these two meetings. The evidence as to what occurred must be discussed in some detail.

### (1)

■ The meeting in Judge Trainor's chambers took place some eight years ago and the testimony as to precisely what was said is, not unnaturally, by no means clear.

According to Morahan, he continued his prior attempts to bargain with the prosecutor for a lesser plea than robbery in the first degree but was wholly unsuccessful. The prosecutor was willing to accept only a plea to the armed robbery count to cover all four counts of the indictment and nothing less. How much Judge Trainor participated in that discussion is not clear. However, Morahan testified that during the course of the meeting, Judge Trainor made a remark to the effect that "I don't think in maximums" and at the conclusion told the two defense attorneys to discuss with their clients the plea offer.

Judge Trainor, on the other hand, testified that it had been his consistent practice not to give any assurances to counsel with respect to possible sentence and that he had never done so. He recalled the Mosher case and specifically denied that he had made any promise or commitment to Morahan with respect to Mosher's sentence, or authorized anyone to do so.[4] He also flatly denied saying to Morahan that he would not think in terms of maximums or using any language to that effect.

None of the other persons present at the meeting in chambers were called to testify by either side, apparently because none of them had any recollection of what had occurred there eight years before.

After analyzing the testimony at the hearing and evaluating the credibility of the witnesses, I find that no promise of any kind as to Mosher's sentence was made by Judge Trainor to Mosher's attorney or to anyone else prior to the change of plea or at any other time.

I further find that nothing was said at the meeting in chambers or elsewhere which could reasonably be construed as a commitment not to impose a maximum sentence, to impose a lenient sentence or, even less, to impose a minimum sentence. Thus the "impression" which Morahan said he received at the meeting in chambers that any such promise or commitment had been made was wholly unjustified and without foundation.

■ On his first contention, Mosher had the burden of showing that a promise as to sentence was made by the Judge. *E. g.*, United States ex rel. Carter v. LaVallee, 441 F.2d 620 (2d Cir. 1971). He wholly failed to sustain that burden here. Thus, the cases holding that a guilty plea induced by a broken promise as to sentence by the judge or prosecutor, is subject to being set aside as involuntary, Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); Smith v. United States, 321 F.2d 954 (9th Cir. 1963); United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir. 1963); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y.1966), do not apply.

There is no merit to Mosher's first contention and he is not entitled to relief on that ground.

### (2)

When Morahan left Judge Trainor's chambers, he encountered Parker, Bracken's attorney, who had not been present at the meeting. Parker, whose client, Bracken, was only 23 and a first offender, said that, about a week before, he had talked to Judge Trainor and the prosecutor about a possible reformatory sentence for Bracken if he pled guilty.

---

4. It may be noted that there is no claim here that the prosecutor made any commitment of any kind with respect to the Mosher sentence.

According to Parker, the Judge had said he would take all the facts under advisement and consider a favorable disposition.

Parker testified that Morahan discussed with him what had happened in chambers and the offer to accept a plea by all three defendants to the armed robbery count. According to Parker, Morahan said that the Judge had "indicated" that if such a plea were taken he would "consider" a minimum sentence and not a maximum sentence. There appears to have been no basis, other than wishful thinking, on which Morahan could have reached the conclusion that the Judge would even consider a minimum sentence for Mosher.

Morahan, Parker, and Graham Schneider, Esq. (the attorney representing Reid) then met with their three clients in the detention area of the Courthouse. What took place there and, particularly, what took place between Morahan and Mosher, is the crux of this proceeding.

In the discussions between Mosher and Morahan as to the advisability of taking the armed robbery plea, the alternatives Morahan presented to Mosher were that he would receive the maximum of 59 to 60 years, if he were convicted after trial, or the minimum (15 to 16 years) as a second felony offender, if he pleaded guilty. It was recognized that since the defendants had been caught "red handed", the State had a very strong case, and that if Mosher went to trial a conviction was very likely.

Morahan posed the alternatives to Mosher in terms of maximums and minimums only and there appears to have been no reference to any sentence in between. Mosher believed that these were the alternatives and made his choice to plead guilty on that basis.

Morahan, however wrongly, believed, from his meeting with Judge Trainor, that these were the alternatives also and that the Judge had promised to impose a minimum if there was a guilty plea. He

gave Mosher assurances that this was the situation and that such a promise had been made. He thus led Mosher to believe that he would receive a minimum sentence of 15–16 years if he took the offered plea but would get 59–60 years if he were convicted, as he probably would be.

Morahan also told Mosher that on another indictment for armed robbery, pending in Bronx County, he would also receive a 15 to 16 year sentence, to run concurrently with the similar minimum which would be imposed by Judge Trainor. Mosher did in fact receive a 15 to 16 year concurrent sentence on his subsequent plea of guilty to the Bronx County indictment.

Despite Morahan's uncertainty after all these years as to the precise language he used in his discussions with Mosher, and the somewhat loose phraseology he indulged in during his testimony, taking the testimony as a whole, the conclusion is inescapable that as a result of Morahan's assurances Mosher was led to believe that Judge Trainor had promised to give him the minimum of 15–16 years on a guilty plea and that Mosher made his decision to plead guilty because of that firm belief. Instead, Mosher received a 40 to 60 year sentence which was for all practical purposes tantamount to a maximum.[5]

The testimony of the other witnesses at the hearing lends credence and support to the conclusion that Mosher was induced to plead guilty because he understood and believed he was to receive a minimum sentence.

Parker, co-defendant Bracken's attorney, told his client, on the basis of his conversation with Morahan, that if he pleaded guilty, the sentence would be "minimum, not maximum". Parker proceeded on the assumption that a penitentiary sentence for his client had been precluded by Judge Trainor and that Bracken would receive a 0 to 5 year reformatory sentence only. This was what Bracken got.

---

5. See note 3, *supra*.

Bracken, who had successfully completed parole after two years at the reformatory and had not been in further trouble with the law, testified that he heard Morahan tell Mosher that there was a deal for a minimum of 15 to 16 years, that Mosher said this was a good deal and that he would take it. The other co-defendant, Reid, who got 10–20 years, testified that Mosher told him he decided to take the plea because he feared a sentence of 60 years after trial and instead was getting a break.

When Mosher pled guilty before Judge Trainor, he was specifically asked by the Court whether any promises or threats had been made to induce him to plead guilty. Mosher gave a negative answer. His attorney said nothing.

While this must be taken into account in evaluating Mosher's contention, it is not of controlling weight or significance. Hilliard v. Beto, 465 F.2d 829 (5th Cir. 1972); United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 314 (2d Cir. 1963); United States v. Tateo, 214 F. Supp. 560, 564 (S.D.N.Y.1963). Mosher, who had had considerable previous experience with the processes of the criminal law, evidently understood that this was the standard answer to be given to that question, even though a plea bargain had been made. This, of course, is common where there have been plea negotiations and could be expected. See United States ex rel. Scott v. Mancusi, 429 F.2d 104, 113 n. 1 (1970) (dissenting opinion), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971).

Mosher's response to the Court's questions when the plea was taken cannot, under the circumstances, be said to overcome the strong evidence that he was told by Morahan and in fact believed that a promise of a minimum sentence had been made by the Judge and was induced to change his plea because he understood that there was such a promise.

On the basis of all of the evidence before me, I find that:

1. Mosher was induced to plead guilty by representations and assurances given him by his counsel, Morahan, which Mosher believed, that Judge Trainor had promised to give him a minimum sentence of 15–16 years if he were convicted after trial as was likely.

2. No such promise had in fact been made by Judge Trainor and the representations and assurances given to Mosher by Morahan that such a promise had been made by the Judge were contrary to the fact and untrue.

3. The sentence of 40–60 years received by Mosher on his guilty plea was directly contrary to the assurances given by Morahan to Mosher as to the Judge's promise as to the sentence which would be imposed.

For the reasons stated in Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), it is well settled that a guilty plea must be voluntarily and knowingly made and that a conviction based on an involuntary plea of guilty is inconsistent with due process and must be set aside on collateral attack by federal habeas corpus. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942).

In cases such as this where a defendant pleaded guilty in the belief that he would receive a minimum sentence and in fact received a maximum, the question of whether or not the plea was voluntarily and knowingly made is by no means simple. If a defendant pleads guilty in the belief that a minimum sentence will be imposed, induced by a promise or commitment by the judge or prosecutor to that effect, and that promise is broken, the plea is involuntary. E. g., Santobello v. New York, 404 U.S.

257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

■ On the other hand, where, though no such promise has been made, the defendant pleads guilty in the belief that he will receive a light sentence but in fact receives a heavy one, the result may be different. If the defendant's belief that he will receive leniency is induced by an erroneous sentence estimate made by defense counsel, his plea is not involuntary and will not be set aside. *See* United States ex rel. Bullock v. Warden, 408 F.2d 1326, 1330 (2d Cir. 1969), cert. denied, 396 U.S. 1043, 90 S. Ct. 688, 24 L.Ed.2d 686 (1970); United States ex rel. Scott v. Mancusi, 429 F.2d 104, 108 (1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971). Moreover, a plea is not involuntary merely because the defendant pleads guilty under the subjective mistaken impression or belief that a promise has been made by the judge that a lenient sentence would be given when instead the sentence was a heavy one. United States ex rel. LaFay v. Fritz, 455 F.2d 297 (2d Cir.), cert. denied, 407 U. S. 923, 92 S.Ct. 2471, 32 L.Ed.2d 809 (1972); United States ex rel. Curtis v. Zelker, 466 F.2d 1092 (2d Cir. 1972).

■ As the Court of Appeals said in United States ex rel. Curtis v. Zelker,

It must be recognized that while a guilty plea, to be valid, must be voluntary and represent an intelligent choice among alternative courses of action available to the defendant, [citations omitted], a defendant's mistaken subjective impressions gained from conferences with his legal counsel, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea. 466 F.2d at 1098.

The Court went on to say:

To justify the issuance of a federal writ vacating his guilty plea, the petitioner must bear the burden of showing that the circumstances as they ex-

isted at the time of the plea, judged by objective standards, reasonably justified his mistaken impression. *Id.*

However, none of the cases in this Circuit dealing with this subject have passed on the effect on the validity of a guilty plea of a false statement by defense counsel to defendant that a promise as to sentence had been made by the judge.

In United States ex rel. LaFay v. Fritz, *supra*, the district court had refused to find that defendant's counsel had made a promise as to what the sentence would be or that counsel had stated that such a promise had been made by the judge. The Court of Appeals held that a guilty plea should not be set aside merely because defendant had the mistaken subjective belief that a promise of leniency had been made. As Judge Feinberg pointed out in his concurring opinion, the most that was established was that "defendant's lawyer had a 'feeling' as to what the sentence would be, which he passed on to defendant." 455 F.2d at 303. Judge Feinberg went on to say, "Whether the result would be different if defendant's counsel —court appointed or retained—had mistakenly quoted the judge as promising *a sentence of no more than five years* is not before us." *Id.*

In United States ex rel. Scott v. Mancusi, *supra*, the majority reversed as clearly erroneous findings of the District Court that defendant's counsel had made misrepresentations to him concerning commitments by the trial judge as to sentence, on which defendant relied in pleading guilty, stating, "The representations made by counsel to Scott were couched in the language of hope rather than of promise and were merely estimates made in good faith as to what he thought would result. . . ." 429 F. 2d at 108. It was held that this was insufficient to render the guilty plea involuntary. The judgment below, granting defendant's petition for a writ was reversed and the petition dismissed. The dissent took the position that the findings of the District Court should not

have been reversed and that on the basis of such findings the guilty plea should be set aside because it was induced by mis-representations of counsel as to commitments made by the judge concerning the sentence which would be imposed.

In United States ex rel. Callahan v. Follette, 418 F.2d 903 (2d Cir. 1969), cert denied, 400 U.S. 840, 91 S.Ct. 80, 27 L.Ed.2d 74 (1970), the evidence indicated that while no representations as to sentence had been made by the Court, the guilty plea was induced by representations of defense counsel that counsel had an understanding with the Court that defendant would receive only a suspended or concurrent sentence. The Court stated:

> The question whether or not a plea must be held voluntary unless the state, that is, the judge or prosecutor, induced the plea by affirmative promises or statements as to sentence was reserved in United States v. Horton, 334 F.2d 153 (2d Cir. 1964).

The Court did not reach that question, however, since it held that defendant had waived any objection to his plea by his subsequent failure to take the opportunity offered by the judge to move for withdrawal of the plea. The denial of the writ by the District Court was affirmed solely on that ground.

In United States v. Horton, 334 F.2d 153 (2d Cir. 1964), the statements of counsel and the prosecutor's recommendations as to sentence were expressions of opinion only. In refusing to set aside the guilty plea, the Court of Appeals found it unnecessary to pass on whether affirmative misrepresentations of defense counsel as to commitments made concerning sentence, which induced a guilty plea, would render the plea involuntary.

Other circuits have held that a guilty plea is involuntary and subject to being set aside if induced by false representations of defense counsel as to a promise of a lenient sentence by the trial judge or prosecutor, which was not fulfilled. For example, in United States v. Simpson, 436 F.2d 162 (D.C.Cir.1970), it was held that false representations by defense counsel as to an agreement with the judge concerning sentence would constitute impermissible verbal coercion which made the plea involuntary and would also support a claim of ineffective assistance of counsel. To the same general effect, see Ross v. Wainright, 451 F.2d 298 (5th Cir. 1971), cert. denied, 409 U.S. 884, 93 S.Ct. 98, 34 L.Ed.2d 141 (1972); Petraborg v. United States, 432 F.2d 1194 (7th Cir. 1970); United States v. Schneer, 194 F.2d 598, 600 (3d Cir. 1952) (dictum). See also 8 Moore's Federal Practice, ¶ 11.05[4] at 11–104 to 105 (2d ed. 1972), where it is said that a "[p]lea induced by defense counsel's false or mistaken representations to defendant as to what, if anything, the prosecutor promised . . . should be vacated, regardless of the prosecutor's lack of complicity in the fraud or mistake."

However, as has been demonstrated, the question presented here remains open in this Circuit. It is a difficult one.

The question must be viewed in the context of the standard set by Chief Judge Friendly in United States ex rel. Curtis v. Zelker, supra, that the petitioner has the burden of showing that "the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justify his mistaken impression." 466 F.2d at 1098.

As Judge Weinfeld said in United States v. Colson, 230 F.Supp. 953, 955 (S.D.N.Y.1964):

> The determination of the ultimate question of whether the defendant, at the time he pled guilty, had the free will essential to a reasoned choice, rests upon probabilities and, of course, cannot be resolved with mathematical certainty. It involves an evaluation of psychological and other factors that may reasonably be calculated to influence the human mind. . . . [I]t is necessary to consider the plea of guilty against the totality of events and circumstances which preceded its entry.

Applying these standards to the case at bar, and considering Mosher's guilty plea "against the totality of events and circumstances which preceded its entry", Mosher has met the burden of showing that the circumstances "judged by objective standards" reasonably justified his mistaken belief that Judge Trainor had promised him what was tantamount to a minimum sentence and had indicated he would receive a maximum if he were convicted after trial. He got the maximum instead of the minimum.

What induced Mosher to plead guilty was not merely an erroneous estimate or expression of opinion by defense counsel as to sentence. Nor was it a subjective mistaken impression (or, indeed, wishful thinking), induced by the discussions with his counsel, which was not reasonably justified. Morahan told Mosher that Judge Trainor had promised a minimum if he pled guilty, in so many words, and the tenor of the entire discussion was such as to make Mosher believe that this promise had been made.

This was supported by the testimony of all the witnesses who were present at the discussions in the detention area. It is also supported by such circumstances as the minimum sentence of 15–16 years on the Bronx County indictment actually imposed on Mosher to run concurrently with the Westchester County sentence which appears to have been negotiated by Morahan on the basis that it was the same as the sentence Mosher was to get from Judge Trainor; the utter shock and surprise of both Morahan and Mosher when the 40–60 year sentence was announced; the prompt commencement of state proceedings based on the claim of the Judge's broken promise.

From Mosher's standpoint, the effect of the false statements by counsel was no different than it would have been had the Judge actually made the alleged promise and broken it. He was entirely in the hands of his attorney, who was also an officer of the Court, and he was fully entitled to believe that the misrepresentations made to him by Morahan were true.

As Chief Judge Friendly does, I recognize and am concerned about the dangers in any proposition "which would afford an all too easy avenue for the invalidating of convictions on pleas of guilty," United States v. Horton, *supra*, 334 F.2d at 154, or would "provide every prisoner with an opportunity to start out with a guilty plea, with the assurance that if he should later be disappointed at the treatment accorded him he could withdraw his plea and demand a trial on the ground that at the time of his guilty plea he had labored under an erroneous impression as to what would happen to him after acceptance of the plea." United States ex rel. Curtis v. Zelker, *supra*, 466 F.2d at 1098.

However, if the standards of objective proof required by United States ex rel. Curtis v. Zelker are adhered to, these dangers are, at the least, very substantially reduced. Where, as here, the proof meets these objective standards, whatever dangers there may be are not sufficient to permit the Court to countenance a clear deprivation of important Constitutional rights or to fail to grant appropriate relief for such deprivation. I hold that Mosher's plea was involuntary and thus violative of his constitutional rights.

Beyond this, there is a further question here—whether the conduct of Morahan in making the egregious misrepresentation that the Judge had promised a minimum sentence, with the disastrous consequences to Mosher which followed, resulted in depriving Mosher of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments. "This is not a case where hindsight reveals tactical or strategic errors 'over which conscientious attorneys might differ'." United States ex rel. Maselli v. Reincke, 383 F.2d 129, 132 (2d Cir. 1967). Nor does the case involve advice of a legal nature in an area where lawyers might well have differing views. *Cf.* McMann v. Richardson, 397

U.S. 759, 769–771, 90 S.Ct. 1441, 25 L. Ed.2d 763 (1970).

Here there was a flat false representation by Morahan that there was a promise of a minimum sentence by the Judge, though there was none. There was no justification for the false statement made. The false statement resulted in Mosher's being deprived of basic constitutional rights. A defendant is deprived of the effective assistance of counsel if his counsel's conduct was "of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); United States v. Horton, 334 F.2d 153 (2d Cir. 1964); United States ex rel. Boucher v. Reincke, 341 F.2d 977, 982 (2d Cir. 1965); United States ex rel. Maselli v. Reincke, *supra*; United States ex rel. Marcelin v. Mancusi, 462 F.2d 36 (2d Cir. 1972). Conduct is of such a kind "[i]f counsel's representation is so 'horribly inept' as to amount to 'a breach of his legal duty faithfully to represent his client's interests'." United States ex rel. Maselli v. Reincke, *supra*, 383 F.2d at 132, quoting from Kennedy v. United States, 259 F.2d 883, 886 (5th Cir. 1958), cert. denied, 359 U.S. 994 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959). In addition, the results must have been so prejudicial to defendant as to have deprived him of substantial rights. United States ex rel. Maselli v. Reincke, *supra*, 383 F.2d at 132. When these two elements are present there is a fundamental lack of fairness essential to due process and defendant has been denied the effective assistance of counsel to which he is entitled under the Sixth and Fourteenth Amendments.

Here there is a direct cause and effect relationship between the false statements of counsel and Mosher's loss of important Constitutional rights. The prejudice to Mosher is undeniable. It is difficult to see how false representations by counsel, however motivated, could have had more disastrous consequences for the client. Thus, not only was Mosher's plea involuntary but, under the circumstances, he was denied the effective assistance of counsel in pleading guilty and the judgment of conviction should not be allowed to stand on this ground also. United States v. Simpson, 436 F.2d 162 (D.C.Cir.1970).

(3)

There remains a question as to the remedy to be afforded to the petitioner in a case such as this.

Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) held that a breach of agreement by the prosecutor that he would make no recommendation as to sentence required that a judgment of conviction on a guilty plea be vacated. In that case, the Supreme Court remanded the case to the state courts for further consideration of whether there should be specific performance of the. agreement which had been broken or whether the petitioner should be permitted to withdraw his guilty plea and stand trial.

This case is different from *Santobello* since there there was a breach of an official promise for which the state was held responsible and here there is no promise of that nature. The remedy fashioned in *Santobello* was based, in part at least, on the theory that the circumstances might require specific performance of the plea agreement instead of the relief of withdrawal of plea sought by the petitioner. Despite the differences, however, *Santobello* suggests a form of remedy here which would be both just and simple. It is now some eight years since the events for which Mosher was indicted took place. It may well be that if Mosher's plea were vacated, the state would find it difficult, if not impossible, to try the case at this late date, due to lack of witnesses or other eventualities. On the other hand, Mosher's only complaint here is that, whereas he believed he had a commitment for a sentence of 15–16 years, in fact he had no such commitment. If Mosher had received a sen-

tence of 15–16 years, he would have had no complaint.

Under these circumstances it appears that a fair and just solution would be to permit the state courts to determine whether Mosher should be permitted to withdraw his plea of guilty to armed robbery and stand trial for the crimes with which he was charged, or to reduce his sentence to 15–16 years, which was what he expected.[6]

The order to be entered will so provide.

This opinion constitutes my findings of fact and conclusions of law in this case.

Settle order on 10 days' notice.

---

6. In view of my decision on Mosher's claims addressed to his guilty plea, it is unnecessary to reach Mosher's additional claim based on alleged disclosure of his presentence report to the prosecutor and to the Appellate Division. I do not pass on that claim.