Joseph W. **DOUGHERTY**

v.

**UNITED STATES.**

**Civ. A. No. 72–2026.**

United States District Court,
E. D. Pennsylvania.

Nov. 16, 1973.

Harry S. Tischler, Philadelphia, Pa.,
for petitioner.

Richard R. Galli, Asst. U. S. Atty.,
Philadelphia, Pa., for respondent.

### MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

#### I. *Preliminary Statement*

This is a motion under 28 U.S.C. § 2255 seeking to invalidate a plea of guilty to three bank robbery charges on the ground that it was involuntarily made. The principal thrust of the motion is the claim that the plea was induced by a plea bargain among the defendant, the prosecutor, and the judge, which was breached when the judge imposed a sentence of 40 years instead of the 25 [1] for which defendant claims he had bargained.

Santobello v. United States, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1972), held that due process requires relief for a defendant who has pled guilty where the prosecutor failed to perform a promise that induced the plea. Such relief can take the form of either performance of the promise or permission to withdraw the plea. But, as Judge Rosenn so aptly observed in Paradiso v. United States, 482 F.2d 409 (3d Cir. 1973), the voluminous litigation in the civil law as to the definition and operation of a promise presaged that *Santobello* would generate further litigation "over what constitutes a promise, whether any promise had been made, and the effect of advice or assurance given by the defendant's own counsel." Like most of the other cases in this area, the disposition here depends primarily upon the resolution of the disputed issues of fact, not law, for the essential legal principles in the area have begun plainly to emerge from the appellate courts.

The facts in this case were developed at an evidentiary hearing at which petitioner was represented by court-appointed counsel. As will be seen, our factual findings are that there was no plea bar-

---

1. At one point during the hearing, petitioner claimed he expected only 20 years, but we find this claim unsupported by all the other testimony.

gain in the case either between the defendant and the prosecutor or between the defendant and the judge (as is the petitioner's real theory). Moreover, we also find that petitioner's plea was voluntary and not induced or vitiated by any firm assurances of his counsel that there was in fact a bargain; hence relief will be denied.

## II. *Findings of Fact*

On July 25, 1968, petitioner, Joseph W. Dougherty (Dougherty), was indicted for the armed robbery of a bank in Bucks County in the Eastern District of Pennsylvania. The case was docketed as Crim. No. 23353 and assigned to the calendar of Judge C. William Kraft, Jr. Petitioner retained as defense counsel Samuel Smith, Esq. (Smith), an experienced criminal lawyer.[2] At that time petitioner had also been indicted for two bank robberies in California and still faced prosecution for other bank robberies in Massachusetts and New Jersey.[3] It was the government's contention that petitioner was a part of an itinerant bank robbery ring. After having a private detective agency investigate the charges, and after a full evaluation of all the evidence, Smith concluded that it was in his client's best interest to consolidate all the charges in this Court and to enter pleas of guilty thereto. Smith also felt it desirable to attempt to obtain a plea bargain with a view to limiting his client's jeopardy to a term certain. The term which Smith and petitioner conceived to be realistic yet considered acceptable was 25 years.

The case was assigned for trial on February 4, 1969, and the government was ready to proceed. Its witnesses were either present in court or on call. On that morning, Smith approached Jerome R. Richter, Esq., the Assistant U. S. Attorney assigned to the case, to solicit his views as to a 25-year sentence. Smith pointed out that the government

would be put to great expense if it had to prove each case against Dougherty in each district where one was pending. He expressed the view that a 25-year sentence was fair to the government and to the defendant; it would mean that Dougherty would serve substantial time, but would still give him a chance to get out and rehabilitate his life. Smith also stated that he desired to present this position to Judge Kraft.

Richter's response to Smith's query is critical in the wake of *Santobello.* It was essentially as follows: *First,* Richter did not object to a conference with Judge Kraft at which Smith could present his views to the Judge and seek a commitment from him. *Second,* Richter stated that he would not oppose any particular request that Smith might make. *Third,* in view of the fact that it was then the policy of the United States Attorney's Office in this district not to make recommendations as to sentence, Richter said that he would not make any recommendation as to sentencing. Richter's testimony went on:

Q Do you think that you had a commitment to Mr. Smith not to oppose his—or not to submit a counter-recommendation or to oppose his twenty-five-year recommendation or, indeed, not to submit any recommendation at all?

A That's a commitment? I do believe that I told Mr. Smith that whatever he worked out with the judge, whatever the judge would agree to do, if he would agree with anything, that was fine with me. I had no objection to whatever the judge would agree to do. I would not voice any objection.

Sam Smith, if I recall correctly, said he would recommend to the judge or tell the judge he would recommend to his client a plea for twenty-five years. My recollection was that there was no problem as far as I was con-

2. Mr. Smith has recently been elected to the Philadelphia Common Pleas bench.

3. The California cases were No. 42448, Northern District of California, docketed

here as Crim. No. 69–12, and No. 2952, Central District of California, docketed here as Crim. No. 69–13.

cerned if he wanted to go that route. And I don't believe I ever did raise an objection to it.

In other words, Richter took the position (consistent with the policy of his office) that sentencing was a matter exclusively within the discretion of the Court, and that the prosecutor's office would not become involved in the matter.[4]

Shortly thereafter, just as counsel were called upon to select a jury, Smith requested a conference with Judge Kraft, who agreed to see counsel in chambers. Smith informed Judge Kraft that he had been discussing plea bargaining with Richter. Smith thereupon related the facts of the case to the judge and expressed the view that a 25-year sentence appeared appropriate. Richter assumed a passive role. Judge Kraft responded that he gave no commitment on sentences, but did remark that 25 years is a "severe sentence" or "a long time." The chambers conference was lengthy, but the foregoing findings cover the matters of substance discussed; the balance of the conference was devoted to reminiscenses and general discussion about the practice of law. We find too that Smith left the conference with confidence (his words were "absolute impression") that Judge Kraft would most likely sentence Dougherty to 25 years.

Smith's next step after leaving Judge Kraft's chambers was to visit his client in the U. S. Marshal's cellroom. He related to him that Judge Kraft "thought that 25 years was a . . . very long sentence," and represented that "it appeared . . . that he would be sentenced to a period of 25 years." However, Smith also told his client that:

> Judge Kraft's philosophy or modus operandi was he gives no guarantees or no promises. He didn't come out and say, "O.K., you got twenty-five years."

At no time did Smith tell Dougherty that there was a deal or bargain for 25 years.[4a] In addition to relating the discussion with Judge Kraft, Smith counseled his client. He told him that he thought that the evidence against him was overwhelming and that he thought that a 25-year sentence was fair to all. Doughtery then agreed to enter a plea. We credit Smith's and Dougherty's testimony at the evidentiary hearing that Dougherty would not have entered the plea were it not for the belief that Judge Kraft would impose a 25-year sentence. Although Dougherty testified that Smith counseled him to deny the existence of any understanding about sentencing, Smith testified that he made no such suggestion, and we believe Smith on this point.

While the foregoing recitation represents our findings, it is appropriate that we summarize the testimony of Dougherty so as to highlight the extent to which we have credited some of his factual contentions and rejected others. Dougherty testified that during the relevant period, he was incarcerated at the Philadelphia Detention Center. During one interval between the time of his arraignment and the time of his plea, he was in solitary confinement and went on an eight-day hunger strike. Smith visited him on two occasions. According to

---

4. Richter did, however, agree to attempt to consolidate all the outstanding bank robbery charges in this Court by Rule 20 transfer.

4a. Most of our findings stem from testimony elicited on direct examination of Smith by Dougherty's appointed counsel. At one point, on cross-examination by the government, Smith did testify that "I felt in my mind that we had a deal. And I must have conveyed that to him [Dougherty] because I believed it myself." We cannot gainsay that this piece of testimony is inconsistent with the rest of Smith's testimony. Our task, however, is not to harmonize all the testimony given at the hearing, but rather to make findings, accepting and rejecting evidence according to our best judgment. We note particularly in regard to Smith's statement quoted above that "I must have conveyed that to him" is an exceptionally weak statement of fact (if a statement of fact at all), and we have concluded in our overall findings that Smith sufficiently and specifically informed Dougherty that Judge Kraft did not make any promises and that there was no deal.

Dougherty, on the latter occasion, Smith told him that he was pretty sure that he would get a sentence of 25 years or less if he entered pleas to the Bucks County robbery (the one before Judge Kraft) and the two Rule 20's from California. Dougherty responded that he would enter a plea for that sentence.

Dougherty further testified that after the chambers conference with Judge Kraft:

> Mr. Smith told me he had just come from the judge and he had a commitment that the sentence would be twenty-five years or less. He said probably it would be less, because the judge had told him to tell me that he realized I was a young man and that I was not going to spend the rest of my life in jail. And he had never sentenced a man over twenty-two years in his entire time on the bench.[5]

> Q Did your discussion with Mr. Smith go into anything beyond that?
> A I just asked him, I said, "Are you sure?"
> And he said, "Yes. I talked to the District Attorney. I talked to the judge. Your sentence will be twenty-five years or less."
> Q What, then, were your instructions to Mr. Smith?
> A I said, "Go ahead. . . ."

Dougherty denied that Smith had told him the judge would give no commitment, and testified that he would not have entered the plea had he thought there was no commitment for 25 years. And he testified that Smith had told him not to say anything when the judge asked him whether he had been given any promises. We reject Dougherty's foregoing version of the facts on these points, which is inconsistent with Smith's version which we credit.

The guilty plea on February 4, 1969 (on the Bucks County robbery), before Judge Kraft is, of course, a part of the record. The transcript reports the following colloquy between Judge Kraft and Dougherty:

> Q. Do you understand that what punishment shall be meted out is solely a matter for the judgment of the judge before whom your plea is entered?
> A. Yes, sir.
> Q. Have you been offered any inducements or have you been made any promises by the United States Attorney or by the FBI or by your own attorney or by anybody at all—
> A. No, sir.
> Q. —to persuade you to change your plea and admit to your guilt?
> A. No, sir.

The Rule 20 papers were not ready at that time, and accordingly, Dougherty was again brought before Judge Kraft on March 26, 1969, for acceptance of the plea with respect to the two California indictments. Smith was then engaged on trial in the state courts and his associate, Mayer Horwitz, Esq., represented Dougherty. Smith felt his presence unnecessary, since, as far as he was concerned, all the plea negotiations were concluded and all that Horwitz had to do was to "stand in." But the colloquy between the judge and Dougherty on March 26, 1969, is significant:

> Q. Is the plea which you are entering or propose to enter entered willingly of your own free will and accord without any promises or inducements of any kind whatsover?
> A. Yes, Your Honor.
> Q. Has anyone represented to you or sought to represent to you that if you entered a plea of guilty to this and/or any of the other charges which are pending or are about to pend before me, that there was any assurance or promise or indication of what the sentence would be?
> A. No, Your Honor.
> Q. Because I tell you before you enter the plea, I have not given any as-

---

5. Neither Smith nor Richter recalled the judge having said that he had never sentenced a man to over 22 years.

surance to the United States Attorney or to your counsel of what the sentence would be. I have not in my own mind determined what the sentence would be. And if you are entering the plea on any expectation that I have given some promise, direct or indirect, that you would get a certain type of sentence, then you would have been misinformed. Do you understand that?

A. Yes, Your Honor.

Q. Now, knowing that, is it your desire to plead guilty to this charge, as your counsel has indicated?

A. Yes, Your Honor.

We find that these colloquies reinforced Smith's statements to Dougherty that Judge Kraft had made no commitments.

All in all, defendant pleaded guilty to three separate indictments, one of which emanated from this district and two of which were brought from California under Federal Criminal Rule 20.[6] Sentencing took place on April 7, 1969. The U. S. Attorney, as Richter had promised, made no sentencing recommendation.[7] Judge Kraft thereupon imposed sentences totaling forty years.[8] Smith was shocked at the severity of the sentence, but did not move before Judge Kraft for withdrawal of the plea on the ground of an alleged bargain.

Our findings are further supported by two documents in the record of this case. The first is a letter from Dougherty to Judge Kraft, dated May 25, 1969, one month after sentencing, and received into evidence at the hearing before us. The thrust of the letter is a plea for a reduction of the sentence, and most of the letter describes Dougherty's difficult personal circumstances and his reasons for wanting a shorter sentence. The beginning of the letter, however, expresses Dougherty's disappointment at the severity of the sentence and the basis for his surprise:

> I am only now recovering to some extent from the schock of the sentence you have imposed upon me.

> My attorney told me he had talked to you. About me makeing a guilty plea and that you had told him that "you understood that I was a young man, and naturally did not want to be buried. I also was told that you never had given a man more then twenty-two years in your entire career on the bench."

The absence of any reference to an agreement or bargain or understanding is, we feel, significant. Dougherty's failure to make any mention, one month after sentencing, of a bargain or agreement militates against his later claim that there had been a bargain. The statement attributed to Smith comports entirely with our findings as to Smith's advices to him, i. e., that Judge Kraft's views were such that a sentence shorter than 25 years seemed likely.

The second document is Dougherty's formal Petition for Reconsideration of Sentence, filed by Smith on July 16, 1969. Significantly, the sole ground advanced in support of the motion is that "the sentence imposed . . . was excessive." Apparently Smith did not feel that there had been a bargain, and Dougherty had not called this argument to his attention. This motion was denied without a hearing.

The foregoing findings give rise to several ultimate findings of fact. First and foremost, we find that there was no

---

6. Richter was unable to bring a New Jersey indictment before Judge Kraft under Rule 20, but the sentence ultimately received by petitioner on the New Jersey bill ran concurrently with the sentences imposed by Judge Kraft. No complaint is made about the New Jersey aspect of the matter.

7. Richter was not present at the sentencing, but another Assistant United States Attorney was.

8. The actual sentence was as follows: concurrent 20-year terms on counts 1 and 3 of No. 23353, followed consecutively by concurrent 20-year terms on each of counts 2 and 3 of No. 69–12 and on No. 69–13. On count 1 of No. 23353 and count 2 of No. 69–12 the judge also imposed $5,000 fines.

plea bargain in this case, either of the conventional type, between Dougherty (through counsel) and the prosecutor, or between Dougherty (through counsel) and the judge, except to the extent that the prosecutor Richter agreed (1) to consolidate the various indictments under Rule 20, and (2) not to make a sentencing recommendation. Insofar as these two considerations constitute a plea bargain, it was kept. Secondly, we find that what induced Dougherty to enter pleas of guilty to the three indictments before Judge Kraft was his expectation, based upon the advice of counsel, that he would receive a sentence of no more than 25 years, coupled with counsel's advice that the evidence against him was overwhelming. In this regard, it will be noted that we use the term "expectation" rather than "assurance" because we have found that Smith informed Dougherty of Judge Kraft's "no commitment" utterance. This formulation does not inveigh against Dougherty's contention, which we credit, that both he and Smith believed that the sentence would likely be less than 25 years, for we see a distinction between an expectation based upon a belief that a judge sees a case a certain way, and an assurance stemming from a bargain. Finally, we find that Dougherty's plea was knowingly, intelligently, and voluntarily made.

### III. *Discussion*

It was established long before Chief Justice Burger's opinion in Santobello that unfulfilled promises or assurances of a particular sentence may be "inducements" which destroy the voluntariness of a plea and serve to invalidate it. Machibroda v. United States, 368 U.S. 487, 83 S.Ct. 510, 7 L.Ed.2d 473 (1962), held

that a guilty plea must be vacated if the defendant can prove that he had been falsely promised by the prosecutor, in return for the plea, that a certain sentence would be given.

This rule is a function of the even more fundamental principle that to be valid a guilty plea must be knowing, intelligent, and voluntary. For a plea is more than an admission of past conduct; it is the defendant's consent that a judgment of conviction be entered without a trial. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Such a consent requires a waiver of the right to trial before a judge or jury and the rights to confront and cross-examine witnesses, to present exculpatory evidence, and to be presumed innocent unless found guilty beyond a reasonable doubt. Waivers of constitutional rights must be not only voluntary but also knowing, intelligent steps taken with awareness of the relevant circumstances and likely consequences.[9] *Santobello* is but a continuation of this line of cases, with the added gloss which approves the device of plea bargaining and gives binding effect to a prosecutor's promise when the facts of the individual case indicate that the guilty plea was induced by, or given in exchange for, a prosecutorial promise.

This case is clearly not governed by *Santobello*, in view of our finding that there was no plea bargain either between Dougherty and the prosecutor or between Dougherty and the judge.[10] But the case is within the mainstream of the line of authority dealing with what constitutes a voluntary plea, for there are cases holding that, even where there is no promise by the prosecutor or judge, a plea may lack voluntariness

---

9. *See Santobello, supra,* at 264–265, 92 S.Ct. 495 at 500, where Justice Douglas noted, in his concurring opinion, that "a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver" of several fundamental rights.

10. Of course, a bargain between the defendant and the judge would be improper under

Standard 3.2, American Bar Association Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Tent. Draft 1967) although we have no doubt that the principles of *Santobello* would apply equally to it. *See* United States v. Tillman, 467 F.2d 645, 646 n. 1 (3d Cir. 1972) ; United States ex rel. Elksnis v. Gilligan, 256 F. Supp. 244 (S.D.N.Y.1966).

where the defendant's counsel has, for whatever reason, misrepresented to the defendant that there has been such a promise and the representation by counsel is an inducement to the plea. For example, in Mosher v. La Vallee, 351 F. Supp. 1101 (S.D.N.Y.1972), Judge Bryan found as a fact that, although defense counsel had no commitment from the prosecutor or judge, he had represented to his client that the judge had committed himself to give a 15–16 year sentence on a guilty plea, and granted the petitioner relief.[11]

The Third Circuit has not yet had an opportunity to address the issues raised in Mosher. It has, however, twice dealt with situations in which there was no understanding or agreement with the prosecutor but where the defendant was induced to plead by the "assurances" of his defense counsel that the sentence that would be imposed would be concurrent with the sentence he was already serving. In Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972), and in Paradiso v. United States, 482 F.2d 409 (3d Cir. 1973), the court held that such "predictions" by defendant's counsel did not render the plea involuntary.

In Masciola, there was no allegation of an understanding with the prosecutor or judge. The petitioner complained that he pleaded guilty because his lawyer "assured" him that his sentence would be concurrent with one he was already serving. The court denied relief, holding that "[i]naccurate assurance by counsel, or erroneous expectations of defendant, as to sentencing are not in and of themselves grounds for reversal of a conviction or for permission to withdraw a guilty plea." The court noted that petitioner alleged no facts "to indicate that counsels' assurances were any more than predictions based on counsels' knowledge and experience . . . "[12] In Paradiso the petitioners pleaded guilty after defense counsel told them "there was a good probability of getting a concurrent sentence" on the two charges. One indictment was in the Eastern District of New York (in Brooklyn) and the other in New Jersey. Counsel learned that if the New Jersey case were transferred to Brooklyn, the usual policy of the Brooklyn U. S. Attorney's Office would be to recommend concurrent sentences. Instead, the Brooklyn case was transferred to New Jersey, and defense counsel testified that

---

11. The remedy ordered in Mosher, like that in Santobello, was to let the state courts determine whether to enforce the non-existent promise or allow the petitioner to withdraw his plea. While leaving the remedy open may at first blush seem inappropriate, its wisdom is obvious in a situation where the government may no longer be able to prove a case against the defendant because of the lapse of time, the death or disappearance of witnesses, etc. In such a situation, where the government was in no way at fault in the events giving rise to invalidation of the plea, there would be extreme reluctance to let a defendant go free, particularly in a case of one convicted of a heinous crime, because of the misfeasance of his counsel. In a sense it is equally unfair to the government to reduce the sentence to comport with the defendant's unjustified expectation where the government is entirely blameless. In a federal case such as this, the choice would have to be made by the court which grants relief, which might be best advised to abide by the prosecution's preference.

12. The court relied upon Wellnitz v. Page, 420 F.2d 935 (10th Cir. 1970), which denied relief to a man sentenced to 100 years who claimed he expected 25 years. The court observed:

Certainly, if an attorney recklessly promises his client that a specific sentence will follow upon a guilty plea, or otherwise unfairly holds out an assurance of leniency in exchange for a confession of guilt, the question may arise whether such assurances were coercive, or whether such representation may be deemed constitutionally ineffective. Brown v. Beto, 377 F.2d 950 (5th Cir. 1967). However, an attorney may offer his client a prediction, based upon his experience or instinct, of the sentence possibilities the accused should weigh in determining upon a plea. An erroneous sentence estimate by defense counsel does not render a plea involuntary.

Accord, Moorhead v. United States, 456 F.2d 992, 995 (3d Cir. 1972); Conley v. United States, 407 F.2d 45 (9th Cir.), cert. denied, 396 U.S. 853, 90 S.Ct. 113, 24 L.Ed.2d 102 (1969).

he "assumed" that the Brooklyn sentencing policy would prevail in New Jersey, by virtue of the fact that the Assistant U. S. Attorneys handling the cases in the two districts had talked to each other and agreed to consolidate the cases in New Jersey. The court held that *Masciola* was controlling.

The Third Circuit's use of the word "assurances" in *Masciola* and *Paradiso* does not necessarily posit a rule that a defendant will not be entitled to relief in any case where the plea is induced, not by the assurances of the government or the court, but by the assurances of his own counsel, regardless of how baseless or reckless those assurances are. Indeed, in Moorhead v. United States, 456 F.2d 992 (3d Cir. 1972), the court indicated that a guilty plea is involuntary if induced by intentional misrepresentation of the defendant's attorney that a plea bargain has been struck.[13] *Cf.* Castro v. United States, 396 F.2d 345 (9th Cir. 1968), where the court ordered a hearing on voluntariness on the basis of an affidavit of the defense attorney that he had erroneously advised the defendant that his sentence could be no longer than six years and that he would be eligible for parole after one-third of his sentence (this was a narcotics case carrying a maximum of 20 years and in which parole was unavailable). And we have already discussed *Mosher*. However, we need not determine precisely what line the Third Circuit would draw between *Masciola* and *Paradiso* on the one hand, and *Mosher, Moorhead,* and *Castro,* on the other, for the facts that we have found in this case come squarely within *Masciola* and *Paradiso's* ambit. Our findings have been that Smith's statements to Dougherty were his predictions as to what Judge Kraft would do. Hence, relief must be denied.

There is, however, another aspect of the matter. It relates to the colloquies on the record between Judge Kraft and Dougherty at the time of plea, which we have recited in our findings of fact. On February 4, Dougherty denied being offered any inducements by anyone, including his attorney. And on March 26, when the two rule 20 pleas from California were entered, Judge Kraft stated that he had given no assurance to the U. S. Attorney or defense counsel as to what the sentence would be, and cautioned Dougherty that if he was entering the plea on any expectation that the judge had given some promise that Dougherty would get a certain type of sentence, he had been misinformed. While it is true that Dougherty's answers to such "no promises" questions are not dispositive on the issue of voluntariness, we have in this case found, after an evidentiary hearing, that Smith also advised Dougherty that Judge Kraft would make no promises or commitments.

We hold, then, that Dougherty's plea was voluntary, the product of the con-

---

13. We note that the prophylactic rule established in *Paradiso* militates against this type of situation arising in the future, at least in cases originating in this circuit. Judge Rosenn wrote in *Paradiso*:

> We believe that it is appropriate at this time for the district courts of this circuit to take similar prophylactic measures to cope with this problem. In connection with their rule 11 inquiry on a plea of guilty, district judges should in essence inform the defendant that plea bargaining is specifically approved by the court and that he may truthfully inform the court of any plea negotiations "without the slightest fear of incurring disapproval of the court." Inquiry should also be made of counsel for the parties as to any plea negotiations. Should inquiry reveal the presence of plea negotiations, counsel for the parties should be required to state plainly the terms of record and the defendant should state of record whether he understands them and concurs. The court, of course, is not obligated to accept any recommendation or bargain reached by the parties, and it should so inform the defendant when any bargain is disclosed. Compliance with this procedure should avoid ostensible claims by defendants of unfairness in the guilty plea process and minimize the escalating number of cases complaining of aborted plea bargains, involuntary pleas, or frustrated plea expectations.

current views of Dougherty and Smith that, in view of the overwhelming evidence, it would be preferable to plead and their belief that, in all probability, Judge Kraft would impose a sentence of not more than 25 years. The plea was not deprived of its voluntary character by any representations of the prosecutor or judge, or by a categorical statement of defense counsel that a bargain had in fact been struck. It may be that the sentence of 40 years was overly long, and that 25 years would have been more appropriate. However, we are powerless to review the sentence; all that is before us is the voluntariness of the plea.