**UNITED STATES ex rel. Flossie BUL-
LOCK, Petitioner-Appellant,**

v.

**WARDEN, WESTFIELD STATE FARM
FOR WOMEN, Respondent-Appellee.
No. 350, Docket 32752.**

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1969.

Decided April 4, 1969.

1327

Leon B. Polsky, New York City (Milton Adler, acting Attorney-in-Charge, The Legal Aid Society, New York City, on the brief), for appellant.

Murray Sylvester, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for appellee.

Before MEDINA, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Petitioner appeals from an order of the United States District Court for the Eastern District of New York, denying her petition for a writ of habeas corpus. We affirm the order.

Petitioner was indicted for first degree murder for fatally stabbing the man with whom she had been living. Four attorneys were assigned to defend her. The Supreme Court, Kings County, accepted a plea of guilty to first degree manslaughter and sentenced her to ten to twenty years imprisonment on March 18, 1963. Petitioner contends that her guilty plea was not voluntary under the due process clause of the fourteenth amendment. We must therefore review the events relating to the plea.

On September 19, 1962, petitioner's four attorneys met in her absence with the district attorney and Judge Miles F. McDonald, who presided at all the state court proceedings. After a discussion of petitioner's extensive criminal record and the sentencing possibilities under a plea of guilty to first or second degree manslaughter, the judge stated that he would accept a guilty plea to first degree manslaughter or, if petitioner were a second felony offender, to second degree manslaughter.

Defense counsel went to speak with petitioner and returned to inform the court that "[f]or the first time, she says she is not guilty." Petitioner was sent for and the judge told her that she "would have considerable difficulty in taking the witness stand" because her "record would come out." He then described the plea options discussed with her counsel and noted the range of permissible sentences, but did not promise any specific sentence. The judge told petitioner that she was not compelled to enter the guilty plea but that pleading guilty "is an assurance for you to avoid serious consequences of a conviction for murder in the first degree." The judge then said: "However, if you are not guilty, there is nothing that you can do, if you say you are not guilty." The judge went on to review the evidence against petitioner, stating that she told the district attorney that when the deceased kicked at her door, she got a knife, opened the door and stabbed him in the chest. The judge said he was making no recommendation, threat or promise except that

he would reduce the plea to manslaughter in the second degree if defendant proved to be a second felony offender. He urged her to listen to the advice of her lawyers.

After discussing the case with petitioner, her lawyers returned and one of them, Gold, said: "Nothing doing, Judge; she has changed her mind [and will not plead guilty]." Gold suggested that petitioner be sent to a hospital for psychiatric observation. The court called her and informed her of Gold's doubts about her mental health. She responded sensibly to the court's questions about the case and said: "There is nothing wrong with me." The court refused to commit her for observation and remanded her for trial on her plea of not guilty.

On December 12 petitioner appeared before the court with two of her lawyers, Seligman and Kooper, for the purpose of withdrawing her plea of not guilty and pleading guilty to first degree manslaughter. The court accepted the plea upon the prosecution's recommendation and told the clerk to take the plea. The clerk asked petitioner whether she had discussed the case with her lawyers and whether she understood that Seligman had stated that she would plead guilty to first degree manslaughter; she answered both questions affirmatively. However, when the clerk asked if she wished to plead guilty, petitioner at first did not respond and, when the question was repeated by Seligman, she answered "No." The following exchange then took place:

"The Court: What do you mean 'No?' Listen to me, Miss Bullock. I was told that you wanted to take this plea. This is all I consented to do here. You don't have to take it if you don't want it. If you don't intend to plead, say so and go back and await a trial. You are not being compelled to do it if you are not doing it wilfully. But don't mislead your lawyers and don't mislead me and then when you get here change your mind. This is your last opportunity. Either you plead or you go to trial. What do you want to do?

The Defendant: I want to take a plea.

Mr. Seligman: She did not understand.

The Court: Would you explain it to her? If it turns out that she was a second felony offender and was previously convicted of a felony in New Jersey—perhaps maybe she is not—then I will further reduce the plea to Manslaughter in the second degree. But if she is a first offender, she is going to stand with Manslaughter in the first rather than in the second degree.

The Defendant: Yes.

The Court: Now, do you desire to plead guilty to the crime of Manslaughter in the first degree, unarmed? Now, if you are not doing this willingly, don't do it.

The Defendant: I don't understand.

The Court: Do you plead guilty to Manslaughter in the first degree, unarmed?

The Defendant: Yes.

The Court: Has any promise been made to you or have you been threatened in any way by the Court, the District Attorney, the Clerk of the Court or anyone connected with the Court to induce you to offer this plea?

The Defendant: No.

The Court: Are you pleading guilty of your own free will?

The Defendant: Yes.

The Court: Do you know that by your plea of guilty you admit that you committed the crime of Manslaughter in the first degree, unarmed, to which you plead guilty?

The Defendant: Yes.

The Court: And you plead guilty because you are guilty?

The Defendant: Yes.

The Court: Remanded."

At sentencing on March 18, 1963, the court determined that petitioner was not a second felony offender. Seligman argued for mitigation of punishment on the ground that the deceased had frequently mistreated her and that, when he became violent at her door, she had grabbed a knife to protect herself. The court imposed a ten to twenty year sentence.

The following day the judge held a hearing, with Seligman present, at which petitioner was called and told that the judge had inadvertently failed to follow his usual practice of asking the defendant before imposing sentence whether she had had a fair opportunity to confer with counsel, whether she had been afforded all her rights, whether she had been coerced in any way and whether any promises made by the court had been broken. This colloquy then occurred:

"The Court: Now is there any reason you have to believe that you were not afforded all of your rights in connection with this matter?

The Defendant: I took a plea because—

The Court: I'm not asking you why you took the plea, I want to know whether you were afforded every right to which you were entitled and if you have any complaints to make; not why you took the plea. That was between you and your lawyer; you discussed that with him.

Do you want to talk to your lawyer?

(No response.)

Have you any complaints?

The Defendant: Yes, I have a complaint.

The Court: What is it?

The Defendant: Well, this man was kicking my door down; I had no intention to kill him.

The Court: Have you got any complaints about the Court?

The Defendant: No.

The Court: All right, that's all I wanted to know."

Five weeks after sentencing, petitioner wrote to the court to "appeal" her case. She stated that, although she had expressed a belief in her innocence to

Seligman, he had advised her to plead guilty because she would then be "at the mercy of the court" and would receive "less time."

The letter was treated as an application for a writ of error coram nobis and a hearing was held on June 24, 1963, before Judge McDonald. Petitioner testified that she had never told her lawyers that she was guilty, although she admitted that she had swung her hand with a knife in it when the deceased came to her door. She also testified that she had told Seligman about the facts of the case and that he advised her that she would "get a light sentence" if she pleaded guilty and would serve only about 2½–3½ years before being paroled. She stated that Seligman had not discussed with her the law of self-defense. Seligman had died by the time of the hearing.

At the end of the hearing the court denied the application upon a finding that the plea had been voluntary. It declared that Seligman's statement concerning the sentence had been an "estimate" and not a "promise."

The Appellate Division affirmed the order below without opinion, 24 A.D.2d 843, 263 N.Y.S.2d 697 (1965), and leave to appeal to the Court of Appeals was denied.

Petitioner then made a pro se application for a writ of habeas corpus in the United States District Court for the Eastern District of New York. She alleged that she had been "frightened into taking a guilty plea" and reasserted her claim that Seligman had made a sentence promise. Without holding a hearing or assigning counsel, the district court denied the writ. Petitioner appeals from that order.

The conduct of petitioner's lawyers was not coercive. Their advice that she plead guilty to first degree manslaughter rather than go to trial on a charge of first degree murder may have been sound in view of the evidence against her. The suggestion that she be committed for mental observation constituted an attempt to establish a defense; it cannot reasonably be construed as a threat designed to compel a plea of guilty.

Petitioner's allegation that Seligman promised a "light sentence" and parole after 2½–3½ years was first made at the coram nobis hearing held after Seligman's death. Her letter to the court which led to the hearing asserted only that Seligman had told her that she would be "at the mercy of the court" and would receive "less time." Moreover, at the hearing she admitted that her only complaint was that she had received a longer sentence than Seligman told her she had reason to expect. On the basis of this full and fair hearing the court found that Seligman had made an "estimate" and not a promise concerning the the sentence. Its finding is clearly supported by the record and should be accepted by this court. 28 U.S.C. § 2254(d) (Supp. III 1965–67); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). An erroneous sentence estimate by defense counsel does not render a plea involuntary. See United States v. Horton, 334 F.2d 153, 155 (2d Cir. 1964) (motion under 28 U.S.C. § 2255 (1964)).

Nor was the conduct of the court coercive. Throughout the proceedings the judge assured petitioner that she was free to plead as she wished. His participation in the plea discussions did not, in itself, coerce petitioner. See United States ex rel. Rosa v. Follette, 395 F.2d 721, 725 (2d Cir.), cert. denied, 393 U.S. 892, 89 S.Ct. 216, 21 L.Ed.2d 172 (1968). His review of her situation was intended to assist her in making an informed choice as to her plea. The fact that the information given to her by the judge may have influenced her to plead guilty, rather than to seek acquittal on the ground of self-defense, does not establish that the judge's statements were coercive. See United States ex rel. McGrath v. LaVallee, 348 F.2d 373, 376 (2d Cir. 1965), cert. denied sub nom. McGrath v. McMann, 383 U.S. 952, 86 S. Ct. 1214, 16 L.Ed.2d 214 (1966). As

petitioner had ample opportunity to consider the statements by the court and her lawyers' advice before she made her plea, the court's impatience with her at the time it was made did not render it involuntary. Petitioner's expression of confusion, when called upon to plead, should perhaps have prompted the judge to inquire into the nature of the confusion, but her answers to his questions clearly indicated that she wished to plead guilty and understood the consequences of doing so. The court's unwillingness to hear petitioner's explanation of her reasons for pleading guilty was not prejudicial in view of its efforts to assure that the plea was made voluntarily.

█ Petitioner's plea was not "the product of coercion, either mental or physical" and was not "unfairly obtained or given through ignorance, fear or inadvertence * * *." United States ex rel. McGrath v. LaVallee, supra, 348 F. 2d at 376.

Affirmed.