**UNITED STATES of America ex rel. Fred LaFAY, Petitioner-Appellee,**

v.

**Hon. Harry FRITZ, Superintendent of Auburn Correctional Facility, Auburn, New York, Respondent-Appellant.**

**No. 75, Docket 71–1559.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1971.

Decided Jan. 26, 1972.

Burton Herman, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

Kenneth Weiss, Legal Aid Society of Nassau County, Mineola, N. Y. (James

J. McDonough, Atty. in Charge of Legal Aid Society of Nassau County, and Mathew Muraskin, Mineola, N. Y., of counsel), for petitioner-appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

The State of New York (the State) (representing Hon. Harry Fritz, respondent-appellant), appeals from an order of the United States District Court for the Eastern District of New York, granting a writ of habeas corpus and setting aside the conviction in the Nassau County Court of Fred LaFay, the petitioner-appellee (LaFay). The conviction was based upon LaFay's plea of guilty to the crimes of burglary in the third degree and attempted grand larceny in the second degree. LaFay was sentenced (May 2, 1967) as a second felony offender to concurrent terms of 10 to 20 years (the burglary) and 2½ to 5 years (the attempted grand larceny). LaFay's petition was premised upon his allegation (as stated in his Brief to this court) that "he pleaded guilty as a consequence of a promise by the Court (the late Mr. Justice Kolbrener), or in the alternative upon his good faith belief that a promise existed that he would be sentenced on the Attempted Grand Larceny charge, which carried a maximum of five years' imprisonment. This promise was conveyed to him by his attorney, Sidney Sparrow, Esq." Since there was no proof whatsoever of any promise by the Court, LaFay must rest upon the alternative ground that "his good faith belief that a promise existed that he would be sentenced on the Attempted Grand Larceny charge" caused his guilty plea to become involuntary when his expectations were not realized.

*The State Court Proceedings*

On September 15, 1965 LaFay and another were arrested in Queens County.

Subsequently thereto LaFay and his co-defendant were indicted in Nassau County for Burglary in the third degree, Grand Larceny in the first degree and possession of burglar's tools. LaFay and his co-defendant were represented by skilled and experienced counsel, Sidney G. Sparrow.

On January 12, 1967 LaFay and the co-defendant with their counsel and an assistant district attorney appeared before the Hon. Martin Kolbrener in the Nassau County Court at which time Mr. Sparrow represented to the Court that as a result of conferences with Court, District Attorney and counsel for the defendants and after advising "them [the clients] of all the circumstances surrounding these conferences," the defendants asked leave to withdraw their not-guilty pleas in all three indictments against them and plead guilty to burglary in the third degree and attempted grand larceny in the second degree in full satisfaction of all counts in the three indictments. The District Attorney stated that "no promises or representations have been made by the District Attorney with respect to sentence or punishment in connection with the inducement of this plea." The Court then asked Mr. Sparrow for his position whereupon Mr. Sparrow said:

> "I will state for the record, and I want my clients both to hear this as I say it: There has [sic] been no promises made by the District Attorney as to what the sentence may be in this case by reason of the fact that a lesser plea has been entered here, and I might tell you that there has been no promise on sentence from the Court, too. You know this, do you not, each of you?" [1]

To which both defendants responded in the affirmative.

The Court then pursued the matter further, inquired into the educational

1. To give the Court greater flexibility in the possible range of sentences in addition to the plea as to burglary in the third degree (potential 10 to 20 years), a plea to attempted grand larceny in the second degree (potential 2½ to 5 years) was added.

background of each defendant and addressed them as follows:

"The Court: You are going to be asked to plead guilty to two crimes, both of them felonies. I can sentence you on each of them to jail or on both of them concurrently or consecutively. Do you understand what that means? One following the other. I don't know until I see the probation report.

Has anybody given you any idea of what my sentence will be?"

More specifically, the Court addressed LaFay:

"The Court: Nobody made you any promises?

"Defendant LaFay: No, sir.

"The Court: You are not being forced into this?

"Defendant LaFay: No, sir."

The Clerk then advised them in open court pursuant to the Court's direction that "if you have any prior convictions that may be proved and used against you, you may be liable to additional and increased punishment." Both defendants then withdrew their pleas of not guilty and pleaded guilty to burglary in the third degree and attempted grand larceny, second degree (Minutes of Change of Plea, January 12, 1967, Appx. 33–36).

Sentence originally scheduled for February 24, 1967 was accelerated to February 8th. The Court had allowed LaFay to remain out on bail. LaFay failed to appear and forfeited ("jumped") his bail. He was reapprehended shortly thereafter, having been charged with committing another robbery in the meantime. Sentence was rescheduled for April 27th at which time the Clerk read two previous felony convictions against LaFay. Counsel for LaFay, an associate of Mr. Sparrow, requested the withdrawal of the guilty plea and a 48 hour adjournment. Finally, on May 2, 1967 Mr. Sparrow stated to the Court that LaFay claimed that his guilty plea "was induced by either misstatements or misconceptions on his part, as to the possibilities of a sentence under the type of plea that he was taking" and that these possibilities "were not stated to him properly and adequately;" that a mandatory sentence on the burglary plea of 5 to 20 years "was not what he [LaFay] understood at the time he took the plea." LaFay again through counsel "insisted that this is not a plea which was voluntarily given, but was one that was coerced and induced by reason of improper conversation with his counsel." Counsel further advised the Court as to his reasons for pleading to the attempted grand larceny charge, saying that in his opinion it would give the Court "additional leeway below [burglary, 5 to 20 years] in the event the Court saw itself inclined to give a jail sentence on the lesser one and possibly suspend on the higher one. I discussed this in some detail with the defendant, not giving any promises, but indicating that this was a fashion in which a Court could impose sentence. The defendant has, chosen to indicate to me that he took this to be a promise, which of course, it was not."

The Court then sentenced LaFay as a second felony offender to 10 to 20 years on the burglary charge and 2½ to 5 years on the attempted grand larceny charge.

LaFay thereafter in the Nassau County Court sought an Order in the nature of a Writ of Error *Coram Nobis.* The County Judge,[2] answering the contention that "he [LaFay] entered a guilty plea 'solely upon the reliance of a promise by the Court of a certain sentence to be imposed' which promise he says was transmitted to him by his attorney.", quoted LaFay's counsel's statement in the sentencing minutes, *supra,* together with Mr. Sparrow's affidavit, and concluded that they conclusively proved "that there was no promise of sentence to induce a change of plea." The Judge added, "If a promise was made to the defendant by his attorney, or if defendant misconstrued what his attorney said there

---

2. Hon. Douglas F. Young; Mr. Justice Kolbrener had died.

would be no basis for relief by *coram nobis*" (citing New York cases) (20a). The Judge also commented upon LaFay's forfeiting bail between plea and sentence as a possible influence on the sentence. The motion was denied. On a consolidated appeal from the *coram nobis* denial and the judgment of conviction the Appellate Division, Second Department affirmed. People v. LaFay, 35 A.D.2d 654, 314 N.Y.S.2d 165. Leave to appeal to the Court of Appeals was denied.

### The Federal Habeas Corpus Proceedings

Under date of September 20, 1970 LaFay sought a *habeas corpus* writ and a hearing addressed to the circumstances surrounding his guilty plea. Judge Weinstein granted the petition and held an evidentiary hearing.

Connie Attanasio, a school teacher described by LaFay as "my former girlfriend," testified that on the day originally set for sentencing, she, LaFay and Mr. Sparrow were in a coffee shop near the courthouse and that Mr. Sparrow said, "Judge Coldbrenner [sic] is not willing to give you five to—not willing to give you two to four. He's going to give you five to fifteen." because pressure was being put on the Judge by his wife and friends and because of an article in a local newspaper supposedly about the defendants. Min. p. 6. Miss Attanasio also said that a "couple of months" before the sentencing day, Mr. Sparrow had said that he could get LaFay "two to four" * * * "If he copped out." Min. p. 7.

LaFay testified that he told Mr. Sparrow that he would not accept a plea to burglary in the third degree and that Mr. Sparrow had said that he would be sentenced under the attempted grand larceny charge. LaFay said, "That's five years." * * * "And I didn't want that.", but that Mr. Sparrow had said that the Judge was lenient and it would be "about two to four." Min. p. 13. When on the day originally set for

sentence Mr. Sparrow told LaFay that the Judge wanted to give him five to fifteen and that two to four were out of the question, LaFay said, "I'm not going to take no five to fifteen." Mr. Sparrow told him that he had to talk the Judge out of ten to twenty to get the five to fifteen, whereupon LaFay said, "I'm not going to accept that 15 years." and thereupon "left bail" only to be "apprehended on another charge in Manhattan." On May 2d he appeared with his counsel for sentence and although he tried to withdraw his plea and to tell the Judge "about the promise and everything," he was not permitted to do so.

Mr. Sparrow testified that there had been discussions prior to the plea between himself, LaFay and the Assistant District Attorney and subsequently between him, the District Attorney and the Court. The minimum plea offered by the District Attorney, because of the three indictments against LaFay who had a prior felony record, was burglary in the third degree. Mr. Sparrow suggested an additional plea to attempted grand larceny in the second degree so that "if he [the judge] felt that the probation report warranted imposing a lesser sentence" he might sentence under the lesser crime. Mr. Sparrow told LaFay that "there was every reason to anticipate that he would be sentenced under the burglary count" but that resorting to the additional count would give the Judge leeway if he felt inclined to be lenient to impose the lesser sentence; that he had "an indication or an intimation"—["I didn't say that there was a promise"] that the Judge thought that five years was an adequate minimum sentence. Min. p. 38. Although there were discussions with the Judge "he did not commit himself. He did not say he would do that." Min. p. 47, but that he conveyed to LaFay his "understanding or impression" that the Judge "would impose nothing more severe than the mandatory minimum under the burglary charge." Min. p. 48.

*The Findings of Fact and Law*

At the conclusion of the hearing, the Court dictated its findings on the record in substance as follows:

that at the time LaFay pleaded guilty "he believed that a promise and arrangement had been made between the court and his attorney" that his maximum sentence would be five years and possibly less;

that it was reasonable for LaFay to have had that belief "in view of the circumstances related by his attorney";

that the testimony of LaFay and his former girl-friend was credible;

that LaFay's being upset over the revelation that he would probably receive more than five years is "itself evidence that he believed that a promise had been made."

The Court expressly refrained from making any finding "with respect to any conversation had by the judge with his then defense counsel [Mr. Sparrow]."

In colloquy that followed, the Court said, "I do not find that Judge Coldbrenner [sic] made a promise to defense counsel. I think it would be unreasonable to make such a finding." He premised his decision on the ground that in his opinion LaFay "believed that a promise had been made."

The Court felt that pursuant to its own decision in "U. S. versus Mancuzzi [*sic*] 275 F.Sup. [*sic*] 508 Eastern District of New York, 1967, it is necessary to hold that the conviction of Fred LaFay was unconstitutional under the United States Federal Constitution." [3] accordingly, the conviction was declared to have been invalid and the Court set it aside.

It is clear that neither the sentencing court nor the prosecution made any promise to defense counsel. The only basis for the formation of any belief on LaFay's part as to his prospective sentence could only have come from his counsel. The "circumstances" related by

this counsel included potential sentence discussions with Judge and prosecutor, the reasons for taking the additional plea to the lesser crime in the hope that the Judge might give a shorter sentence than on the burglary charge and that counsel told LaFay that he [counsel] had the feeling that the sentence would be no more than five years. The Court thus premised its decision upon its conclusion that LaFay "believed reasonably that there was a promise." In short, the Court applied a wholly subjective test, namely, LaFay's belief as to what his sentence might be at the time he entered his guilty plea. The Court added the factor of whether this belief was reasonable under the "circumstances."

There is a substantial difference between plea-bargaining and post-plea sentence negotiations. The former relates to the type of crime with its range of potential sentences to which the guilty plea is entered; the latter usually to the actual sentence in the light of the probation report and other intervening facts.

Here the guilty plea was entered on January 12, 1967. Fortunately, the actual minutes of that proceeding are available and reveal a painstaking effort on the part of the Judge to make sure that LaFay and his counsel understood the crimes to which the pleas were to be made and that no promises by Court or prosecutor had been held out as inducements.

Against this record of what actually occurred is pitted LaFay's testimony some three years later in the Federal evidentiary hearing that he believed—a belief based upon his claim of what his counsel had told him—that he would receive a certain sentence.

Many years ago this Court through Judge Clark in a case involving an attempt to withdraw a guilty plea said:

"Counsel relied only on his belief that he had misled his client into being too hopeful as to the possibility of a suspended sentence in the light of nego-

3. United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (1967); referred to herein as *Thurmond*.

tiations [between the plaintiff and a representative of the Securities and Exchange ·Commission].

\* \* \* \* \* \*

"If on so flimsy a basis as this, amounting, at least at the actual time of plea, to no more than counsel's hope for a suspended sentence, a plea of guilty may be withdrawn, it is obvious that an accused may safely indulge in a plea of guilt as a mere trial balloon to test the attitude of the trial judge, being reasonably secure in the knowledge that he can withdraw it without great difficulty."

United States v. Weese, 145 F.2d 135, 136 (2d Cir. 1944).

In 1964 in United States v. Horton, 334 F.2d 153, 154 (2d Cir.), Judge (now Chief Judge) Friendly wrote:

"Horton urges that the vital issue is what his attorney said the United States Attorney had said, even though that was not what the United States Attorney had said to the attorney.

"We are far from persuaded of the validity of any such proposition, which would afford an all too easy avenue for the invalidating of convictions on pleas of guilty."

In Semon v. Turner, 289 F.Supp. 803, 808 (D.Utah C.D.1968), in a case wherein the petitioner claimed that his attorney had told him that a responsible state officer had promised a lesser sentence and that he had relied thereon in pleading guilty, Judge Christensen said:

"Rather, the most that petitioner has shown in this case is that he subjectively misunderstood the full import of the representation made to him by his counsel. Whether this misunderstanding was actual or feigned, contemporaneously experienced or arose as a matter of realization or afterthought, the result would be the same under the circumstances of this case. Such a misunderstanding would be neither reasonable nor of sufficient moment to justify setting aside the plea."

In 1969 in United States ex rel. Bullock v. Warden, Westfield State Farm, 408 F.2d 1326, 1330 (2d Cir.), wherein the petitioner claimed that an inducing promise had been made, Judge Hays for the Court said:

"An erroneous sentence estimate by defense counsel does not render a plea involuntary."

Quite recently in United States ex rel. Scott v. Mancusi, 429 F.2d 104 (2d Cir. 1970), the petitioner asserted a misrepresentation by counsel as to his prospective sentence. This Court, Judge (then Chief Judge) Lumbard, in reversing the granting of a writ, said:

"We believe their findings to be clearly erroneous as the evidence presented by Scott is insufficient to show any misrepresentations. (107).

\* \* \*

"It is well settled in this circuit that '[A]n erroneous sentence estimate by defense counsel does not render a plea involuntary.' (citing cases)" (108).

The fact that LaFay was upset over the sentence (a probative factor in the mind of the District Judge here) would not remove this case from the "subjective" category and is no more indicative of a defendant's surprise or disappointment registered than by an immediate request to withdraw the plea.

In United States ex rel. Callahan v. Follette, 418 F.2d 903 (2d ·Cir. 1969):

"It appears that appellant thought that his counsel had an understanding, communicated by the court, that if he pleaded guilty he would receive only a suspended or concurrent sentence. As soon as sentence was pronounced, appellant and his counsel immediately protested." (p. 904).

Denial of the writ was affirmed on the ground of waiver of objection to the plea.

In Wellnitz v. Page, 420 F.2d 935 (10th Cir. 1970), the petitioner alleged that his attorney had advised him that "25 years was the best that he could do."

Immediately upon receiving a sentence of 100 years, he sought to withdraw his plea. In affirming the denial of this request, the Court, after referring to other situations, said:

"However, an attorney may offer his client a prediction, based upon his experience or instinct, of the sentence possibilities the accused should weigh in determining on a plea. An erroneous sentence estimate by defense counsel does not render a plea involuntary. (citing cases). And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary."

Although the District Court said that it was deciding the case pursuant to its decision in *Thurmond, supra,* the actual decision there did not depend upon a subjective test. In deciding that there should be an evidentiary hearing in *Thurmond,* the Court said:

"If, at the time he pled guilty, the defendant believed that a coercive promise or threat had been made by either the court or the prosecutor, though in fact no such promise or threat had been made, and his plea was induced by this belief, it is an involuntary and void plea. This conclusion necessarily follows from the fact that voluntariness connotes a state of mind of an actor. If the actor—*i. e.,* the defendant—believes that a promise has been made, the effect on his state of mind is exactly the same as if such a promise had in fact been made. Thus, any test of whether a person acts voluntarily is necessarily 'subjective'."

However, after the hearing was held, the Court granted the writ, so that a new sentence could be imposed, upon the grounds that the defendant had been denied effective assistance of counsel and his right to appeal—both quite "objective" in character. Insofar as *Thurmond* may indicate that voluntariness of plea depends upon a defendant's belief (the "subjective" test) that a promise of a particular sentence had been made, although in fact there was no such prom-ise, would seem to be contrary to the law of this circuit.

Order granting the writ and setting aside the conviction reversed.

FEINBERG, Circuit Judge (concurring):

I concur in the result.

Judge Weinstein refused to find that there was a promise here by the state trial judge. Therefore, the line of cases based on failure of a representative of the Government to keep a promise, see, e. g., Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), does not control. The district judge also refused to find that defendant's lawyer, apparently retained, had made a promise as to what the sentence would be, cf. United States ex rel. Callahan v. Follette, 418 F.2d 903 (2d Cir. 1969), cert. denied, 400 U.S. 840, 91 S. Ct. 80, 27 L.Ed.2d 74 (1970), or that the lawyer had stated that there was such a promise by the state judge. The most we can say from this record is that defendant's lawyer had a "feeling" as to what the sentence would be, which he passed on to defendant. But our cases hold that an "erroneous sentence estimate by defense counsel does not render a plea involuntary." United States ex rel. Bullock v. Warden, Westfield State Farm, 408 F.2d 1326, 1330 (2d Cir. 1969), cert. denied, 396 U.S. 1043, 90 S. Ct. 688, 24 L.Ed.2d 686 (1970); see United States ex rel. Scott v. Mancusi, 429 F.2d 104, 108 (2d Cir. 1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971). Under those decisions, defendant's reliance on his lawyer's "estimate"—which would almost always be reasonable—is apparently insufficient to justify setting aside a guilty plea. Whether the result would be different if defendant's counsel—court appointed or retained—had mistakenly quoted the judge as promising a sentence of no more than five years is not before us. See United States ex rel. Callahan, *supra,* 418 F.2d at 904. It may be that such problems will be mini-

mized, at least as to prisoners sentenced by federal judges, by adoption of the excellent suggestions for frank disclosure of plea agreements made by the Advisory Committee on Criminal Rules. See Rule 11, Prelim. Draft of Proposed Amend. to Fed.R.Crim.P. (April 1971).