**UNITED STATES of America ex rel. William DELMAN, Petitioner,**

v.

**Harold BUTLER, as Superintendent of Wallkill Correctional Facility, Respondent.**

**No. 73 C 1813.**

United States District Court, E. D. New York.

March 11, 1975.

William Delman, pro se.

Gene B. Mechanic, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM ORDER

NEAHER, District Judge.

Petitioner, William Delman, is presently incarcerated in the Wallkill Correctional Facility, Wallkill, New York, serving a sentence of 20 years to life imprisonment following a plea of guilty to murder in the second degree in the New York Supreme Court, Kings County. Petitioner has filed an application for a writ of habeas corpus, claiming, in essence, that he was coerced into pleading guilty by the Kings County District Attorney and the State Justice who presided at the plea, taken January 5, 1970. The circumstances under which that plea arose appear undisputed and largely a matter of record.

Petitioner and co-defendants were arrested in 1964 for the shotgun killing of one Joseph Mandola during the commission of an armed robbery of a Brooklyn supermarket on December 23, 1963. Petitioner, on April 2, 1964, pleaded guilty to a charge of first degree murder before Justice Cone, Supreme Court, Kings County, while his co-defendants pleaded guilty to charges of second degree manslaughter that same day. Petitioner, apparently the one who wielded and fired the shotgun, avoided any possibility of the death penalty then extant in this State by his plea, and was thereafter sentenced to a term of natural life on June 2, 1964.

Subsequently, on March 6, 1967, petitioner filed a motion for a writ of error *coram nobis*, alleging that his plea of guilty was coerced by inflammatory media coverage which precluded a fair trial. The question of adequacy of representation for petitioner was also raised with the allegation that his attorney during the plea negotiations, Sidney Gitelman, Esq., had a conflict of interest when he represented one of petitioner's co-defendants as well.

Represented by Peter D. Pervis, Esq., of the Legal Aid Society, petitioner was accorded a *coram nobis* hearing on these claims on July 24 and 25, 1969, before Justice Corso. Decision on the motion was reserved and petitioner was returned to prison. During the pendency of that motion Pervis undertook plea bargaining negotiations on petitioner's behalf with the District Attorney. The District Attorney agreed to a result where, in exchange for his plea of guilty to murder in the second degree, petitioner would be sentenced to prison for a term of 20 years to life imprisonment. The mechanics of the offer were that the District Attorney would consent to the vacating of the previously entered plea of guilty to murder in the first degree, and the entering of a plea of not guilty, rendering moot petitioner's pending claims with respect to its involuntariness. Petitioner would have to agree to withdraw the plea of not guilty and substitute a plea of guilty to murder in the second degree in satisfaction of the indictment.

Pervis communicated with petitioner concerning the nature and substance of the negotiations during the latter part of 1969. At a subsequent meeting between the two the attorney told his client that the above offer was the best he could get; that its refusal would result in the denial of the motion pending before Justice Corso, leaving petitioner to his chances on appeal; that he did not think much of petitioner's chances of winning on appeal; and that basing his future on a reversal of Justice Corso by a higher court "would be making a very big mistake."

At another meeting, on December 17, 1969, Pervis allegedly told petitioner he would be a fool to refuse the District Attorney's offer, apparently in response to an indication from petitioner that he had decided to refuse it. Pervis added

that petitioner would not be offered less than an opportunity to plead to second degree murder, which would mean an additional seven years in prison. Pervis is also alleged to have said that petitioner's only chance of winning would be in the federal courts, that it would take him at least five more years to get there, and that even then the federal courts might not consider the merits of his case. Pervis concluded by saying that he felt petitioner would be making a very big mistake if he turned the offer down, and he urged petitioner to think the matter over very carefully. Petitioner asked Pervis to get an adjournment so he would have more time to think about it.

Apparently as a result of that meeting, Pervis was able to get a final adjournment of the decision of the pending motion until January 5, 1970. Just prior to appearing before Justice Corso, Pervis met with petitioner once again, inquiring whether he had changed his mind about the offer. Petitioner responded that he considered the offer unfair and coercive but felt he had no choice, under the circumstances, other than to accept it.

It is abundantly clear from the record of proceedings on January 5, 1970, that petitioner was intelligent and literate and had no trouble understanding the many questions which ensued. Among other things, petitioner stated unequivocally that he felt that Pervis had represented him properly and to the best of his ability; that it was his desire, and not his attorney's, to plead guilty after having thought the matter over for about one month; that while in the commission of an armed robbery of a supermarket he shot and killed one Joseph Mandola with a 12-gauge shotgun; that no one had forced him to plead guilty and that he was doing so of his own free will; and that he had the absolute right, which only he could waive, to have the charges against him tried before a jury. After sentencing petitioner and advising him of his right to appeal, Justice Corso added some observations on petitioner's previously pending motion, commenting in detail on why he thought each of the grounds advanced by petitioner was without merit.

Petitioner filed a second writ of error *coram nobis* on January 8, 1970, alleging coercion and unlawful pressure by the District Attorney and the court with respect to the plea of guilty to second degree murder. After the filing of opposing papers by the District Attorney, Justice Corso denied the motion without a hearing, April 29, 1970. The appeal from that ruling was denied by the Appellate Division, June 21, 1970. On August 26, 1971, leave to appeal to the Court of Appeals was denied (Gibson, J.).

Having thus exhausted his State remedies, petitioner now seeks from this court a writ of habeas corpus, on the grounds that his plea of guilty to murder in the second degree was involuntary, having been coerced by unlawful pressure, and, secondly, that the denial of his writ of error *coram nobis* of January 8, 1970 without a hearing was error. This court, following issuance of an order to show cause on the Attorney General, has reviewed the record of the *coram nobis* hearing, and all other pertinent papers, and concludes, for the reasons which follow, that petitioner's application must be denied.

Petitioner's argument is that he was deprived of the free choice between standing trial for first degree murder and pleading guilty to second degree murder, because he was told repeatedly that the plea was the only way to obtain a reversal of his conviction of first degree murder. He adds that Justice Corso was a party to the deal and could not therefore perceive its unfairness. He also offers to produce witnesses to testify as to his complete reluctance to plead guilty to second degree murder. His conclusion is that by his involuntary plea he was denied due process, a fair trial, and a trial by jury.

In evaluating petitioner's claim of involuntariness and coercion, the court

notes at the outset that had petitioner sought to claim that his 1964 plea would not have been entered except for a desire to avoid the death penalty and to limit the maximum penalty to life imprisonment, such a claim would not have rendered his plea involuntary. North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). As the court stated in *Alford,* the voluntariness standard is

> "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See Boykin v. Alabama, 395 U.S. 238, 242 [89 S.Ct. 1709, 1711, 23 L.Ed.2d 274] (1969); Machibroda v. United States, 368 U.S. 487, 493 [82 S.Ct. 510, 513, 7 L.Ed.2d 473] (1962); Kercheval v. United States, 274 U.S. 220, 223 [47 S.Ct. 582, 583, 71 L.Ed. 1009] (1927). That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage."

400 U.S. at 31, 91 S.Ct. at 164.

■ In fact, *Brady* and its companion cases, McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), establish beyond doubt that the coercive impact of the Hobson's choice of compromising valuable constitutional rights out of fear of greater punishment should they be asserted in full, does not of itself constitute impermissible coercion. See United States v. Sepe, 474 F.2d 784, 788 (5 Cir. 1973). Voluntariness of the plea can be determined only by considering all of the relevant circumstances surrounding it. Brady v. United States, 397 U.S. at 749,

90 S.Ct. 1463; United States v. Lombardozzi, 436 F.2d 878, 880 (2 Cir.), cert. denied, 402 U.S. 908, 91 S.Ct. 1379, 28 L.Ed.2d 648 (1971).

While the choice petitioner faced in the circumstances of this case is far from the usual pre-trial and pre-conviction situation, it is not without some analogous precedent in this Circuit. In United States ex rel. Elias v. McKendrick, 439 F.2d 771 (2 Cir. 1973), the court upheld a denial of a petition for a writ of habeas corpus in a situation where, after imposition of sentence, petitioner was belatedly allowed to withdraw a plea of guilty to first degree murder and enter a plea of guilty to manslaughter. The court characterized the rearraignment on first degree murder as "a mere procedural formality preliminary to the agreed upon entry of a guilty plea for manslaughter," *id.* at 773, and also found that the sentencing judge's participation in the negotiations leading to the second guilty plea was not coercive and hence did not render the plea involuntary, citing United States ex rel. Bullock v. Warden, 408 F.2d 1326 (2 Cir. 1969). *Id.*

■ The court has reviewed all the circumstances surrounding the plea, and finds no factual basis for petitioner's belief that he was in any way coerced into foregoing his right to prosecute his first *coram nobis* application. Reduced to its essence, petitioner was persuaded by counsel that the most effective approach to seeking the reduction of his sentence was to abandon that application in exchange for a reduced sentence. That petitioner felt he had no other choice does not imply he was coerced; instead, it only serves to underscore both his and his counsel's dim assessment of the viability of the *coram nobis* application. His alleged "reluctance" to plead guilty, even if accepted here as true, is no more than the realization that the better of two unpalatable choices is nonetheless unpalatable.

Petitioner complains of having not been afforded the opportunity to withdraw his first plea of guilty except as it

was contingent upon a second guilty plea, and he characterizes that linkage of the two as coercive. The fallacy in such an argument is that it presupposes that he had the independent right to withdraw the first plea. In fact, he had not yet established any such right—it was the subject of the first *coram nobis* application, which, in exchange for the plea, he voluntarily abandoned. Whatever the merits of that application, his voluntary abandonment of it placed him in a position analogous to that of the petitioner in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, *supra,* who was held to have waived, by his guilty plea, any collateral attack based solely on a claim that the plea was coerced by an illegal confession that would have been offered against him had he gone to trial. The Court's conclusion is fully applicable here:

> "It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt . . . he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently . . . he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." 397 U.S. at 774, 90 S.Ct. at 1450.

Finally, as was the case in Brady v. United States, *supra,* "there is nothing to question the accuracy and reliability of the defendant's admissions that [he] committed the crimes with which [he is] charged." 397 U.S. at 758, 90 S.Ct. at 1474. Under the circumstances, it is not difficult to conclude on the facts that petitioner's plea was voluntarily and intelligently made by a competent defendant with adequate advice of counsel.

■ There remains only petitioner's claim that the denial of his second *coram nobis* application without a hearing deprived him of due process. In view of the foregoing, this argument is without merit. Respondent cites substantial authority, undisputed by petitioner, to establish that no *coram nobis* hearing is required

> " 'when the record conclusively demonstrates the falsity of the allegations and there is no reasonable probability at all that defendant's averments are true' (People v. Guariglia, 303 N.Y. 343 [338, 102 N.E.2d 580])." Respondent's Brief on Appeal of Petitioner's Resentence, Jan. 5, 1970, at 36.

This is in accord with the general rule in federal habeas corpus regarding the holding of evidentiary hearings, 28 U.S. C. § 2243; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), so that the denial of a hearing was plainly not constitutional error under the circumstances.

In sum, accepting all of petitioner's averments at face value, it is clear that petitioner has stated no claim which, if proved, would entitle him to relief.

Accordingly, the petition is denied and it is

So ordered.

The Clerk of the Court is directed to enter judgment in favor of the respondent and against the petitioner dismissing the petition.

The Clerk is further directed to forward a copy of this memorandum order to the petitioner and to the Attorney General of the State of New York.