22-1539-cr
United States v. Delvalle

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2023
No. 22-1539-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

KEVIN DELVALLE,
*Defendant-Appellant.*[*]

On Appeal from a Judgment of the United States District Court for
the Southern District of New York.

SUBMITTED: JANUARY 11, 2024
DECIDED: MARCH 5, 2024

Before: KEARSE, LYNCH, AND NARDINI, *Circuit Judges*.

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Defendant-Appellant Kevin Delvalle pled guilty in the United States District Court for the Southern District of New York to conspiracy to distribute and possess with intent to distribute twenty-eight grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B). The district court (Victor Marrero, *District Judge*) imposed a 420-month sentence, within the Guidelines range stipulated in the plea agreement. On appeal, Delvalle argues that his guilty plea was involuntary because, at the time of the plea, he believed that he would receive a below-Guidelines sentence. We disagree. During the plea colloquy, the court confirmed that Delvalle had not been promised any particular sentence, and that Delvalle understood that a below-Guidelines sentence was only a "possibility." Delvalle's plea was not rendered involuntary simply because he subjectively expected to receive a lower sentence than he ultimately received. Accordingly, we affirm the judgment of the district court.

Jessica Feinstein, Olga I. Zverovich, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

Robert J. Boyle, New York, NY, *for Defendant-Appellant*.

PER CURIAM:

Defendant-Appellant Kevin Delvalle pled guilty in the United States District Court for the Southern District of New York to a drug

conspiracy involving twenty-eight grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B). In his plea agreement, the parties stipulated that Delvalle's advisory range under the United States Sentencing Guidelines was 360 to 480 months, with a statutory minimum term of 60 months. During his guilty plea hearing before a magistrate judge (Katharine H. Parker, *Magistrate Judge*), Delvalle acknowledged that he had not been "promised" a below-Guidelines sentence, but nevertheless thought that it was a "big maybe." App'x at 45. The district judge (Victor Marrero, *District Judge*) eventually imposed a sentence of 420 months, at the midpoint of his stipulated Guidelines range.

On appeal, Delvalle challenges his guilty plea as involuntary. He argues that, at the time of his plea, he believed that he would receive a below-Guidelines sentence, and that this belief influenced his decision to plead guilty. He contends that the district court—aware that he had this subjective expectation—violated Rule 11 of the

Federal Rules of Criminal Procedure by accepting his plea. We disagree. The magistrate judge assiduously complied with her obligation under Rule 11 by confirming with Delvalle that no promise of a below-Guidelines sentence had been made to him and that he understood that such a sentence was merely a possibility. Thus, the district judge committed no error in later accepting that plea as voluntary. We reiterate the well settled rule that a defendant's guilty plea is not involuntary simply because he had, at the time of entering his plea, a mistaken expectation that he would receive a lesser sentence than what the district court ultimately imposed. Accordingly, we affirm the district court's judgment.

I.      Background

Delvalle and his co-defendants, Denfield Joseph and Paris Soto, (collectively, the "Defendants") were gang members who sold drugs and committed armed robberies in the Bronx, New York between 2009 and 2010.

In March 2010, Donnell Harris, who was homeless and staying on the roof of Joseph's building, began spending time with Defendants. Harris repeatedly asked to participate in the armed robberies with them, but Defendants demurred. Harris's requests to join the robbery crew escalated to a threat, after Delvalle and Joseph deceived a customer called "Drop" by selling him chopped-up soap rather than crack cocaine. Drop eventually realized that he had been duped and, seeking retribution, went to Defendants' neighborhood with a gun. Harris learned of the deception and threatened Delvalle and Joseph that he would tell Drop where to find them unless they gave him part of the proceeds from the fraudulent sale. Dissatisfied with this choice between sharing their profits and having their whereabouts exposed by Harris, Defendants took a third approach: they murdered Harris on August 31, 2010. It was no simple affair. They stabbed Harris with kitchen knives and beat him with pots, then tried to drown him in a bathtub, and eventually strangled him with

5

an extension cord. For good measure, they dismembered Harris's body, bagged and loaded it into a shopping cart, doused it in lighter fluid, and lit it on fire.

Years passed before Delvalle would be held responsible for the murder. On March 14, 2018, a grand jury indicted Delvalle on two counts in connection with Harris's death: (i) murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(1), and (ii) murder in connection with a drug crime, in violation of 21 U.S.C. § 848(e)(1)(A). The parties then negotiated a plea agreement under which Delvalle would plead guilty to a one-count superseding information charging him with conspiracy to distribute and possess with intent to distribute twenty-eight grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B). As a condition of his guilty plea, Delvalle would admit to his role in the Harris murder, and his Guidelines range would be determined by reference to the murder guideline under U.S.S.G. §§ 2D1.1(d)(1) and

2A1.1.  In exchange, the government agreed not to separately prosecute Delvalle for his participation in murdering Harris, among other things.  With the murder charge gone, Delvalle's maximum sentence exposure dropped from life imprisonment (or, potentially, the death penalty) to 40 years in prison. The parties stipulated to a Guidelines range of 360 to 480 months of imprisonment, with a statutory minimum term of 60 months.  The plea agreement noted that "neither the Probation Office nor the Court is bound by the . . . Guidelines stipulation," that "the sentence to be imposed upon the defendant is determined solely by the Court," and that the government "cannot, and does not, make any promise or representation as to what sentence the defendant will receive."  App'x at 17.

Appearing before a magistrate judge on November 15, 2019, Delvalle waived indictment, pled guilty to the information, and entered into the plea agreement.  In conformity with Rule 11 of the

7

Federal Rules of Criminal Procedure, the magistrate judge advised Delvalle of his rights and the consequences of his guilty plea. Specifically, the magistrate judge reviewed with Delvalle the penalties for the offense charged in the information and confirmed with him that he had read, understood, and discussed the plea agreement with his counsel. The magistrate judge also confirmed with Delvalle that he understood that neither the Probation Office nor the district judge was bound by the recommendations in the plea agreement; that the district judge would ultimately determine his sentence based on the factors set forth in 18 U.S.C. § 3553(a); and that Delvalle would not be able to withdraw his guilty plea even if the "sentence may be more severe than [he] expect[s]," App'x at 40.

The magistrate judge then questioned Delvalle to determine whether his decision to plead guilty was the result of any promises outside of the plea agreement or any threats:

THE COURT: Mr. Delvalle, aside from what's in the plea agreement itself, have any promises been made to you to influence you to plead guilty?

(Defendant conferred with counsel)

THE DEFENDANT: No.

THE COURT: Have any promises been made to you concerning the actual sentence that you will receive to get you to plead guilty?

THE DEFENDANT: A below-guidelines sentence.

THE COURT: Somebody promised you that you would get a below-guidelines sentence?

THE DEFENDANT: Not a promise, but a big maybe.

THE COURT: Oh, so you understand there could be a possibility of that?

THE DEFENDANT: Yes.

THE COURT: All right. But that wasn't promised to you?
THE DEFENDANT: No.

THE COURT: Have any threats been made to you to coerce you into pleading guilty?

THE DEFENDANT: No.

9

App'x at 45–46.

After this exchange, Delvalle pled guilty and affirmed that his decision to do so was "voluntary and made of [his] own free will." *Id.* at 46. The magistrate judge recommended that the district judge accept Delvalle's guilty plea, finding that he was "competent to enter a guilty plea" and "voluntarily ple[d] guilty." *Id.* at 48. On December 11, 2019, the district judge accepted Delvalle's guilty plea based on his finding that Delvalle "entered the guilty plea knowingly and voluntarily and that there was a factual basis for the plea[.]" *United States v. Delvalle*, No. 1:17-cr-314 (S.D.N.Y. Dec. 11, 2019), ECF No. 89, at 1. The district judge eventually sentenced Delvalle to 420 months of imprisonment, to be followed by four years of supervised release. Judgment entered on July 11, 2022, and this appeal followed.

## II. Discussion

On appeal, Delvalle argues that the district court violated Rule 11 because it failed to ensure that his guilty plea was voluntary and

"not influenced by a 'promise-like' representation not set forth in the plea agreement." Appellant's Br. at 17. Delvalle raises this argument for the first time on appeal, so we review any purported Rule 11 violation for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Vonn*, 535 U.S. 55, 63 (2002) (holding that Rule 52(b) applies to Rule 11 errors); *United States v. Collymore*, 61 F.4th 295, 298 (2d Cir. 2023) ("Where, as here, a defendant never objected in the district court to the purported Rule 11 violation, the defendant must establish plain error."). For an error to be "plain," it "must be[, *inter alia*,] 'obviously wrong in light of existing law.'" *Collymore*, 61 F.4th at 298 (quoting *United States v. Pipola*, 83 F.3d 556, 561 (2d Cir. 1996)).

"Rule 11 sets forth requirements for a plea allocution and is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the

11

defendant." *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (quoting *United States v. Andrades*, 169 F.3d 131, 133 (2d Cir. 1999) (internal quotation marks omitted)). One of the district court's tasks under Rule 11 is to "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). A plea is involuntary if it is "the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *United States v. Roque*, 421 F.3d 118, 122 (2d Cir. 2005) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)).

We hold that the district court did not err, much less plainly err, by accepting Delvalle's guilty plea. Delvalle makes no claim that his plea was obtained through coercion, whether in the form of force or threats. And during his plea colloquy he explicitly disclaimed having received any promises, apart from those set forth in his plea

12

agreement.  The magistrate judge squarely asked Delvalle, "aside

from what's in the plea agreement itself, have any promises been

made to you to influence you to plead guilty?"  App'x at 45.  After

conferring with counsel, Delvalle stated, "No."  *Id.*  The magistrate

judge continued her questioning, asking specifically whether any

promises had been made to Delvalle concerning his sentence, to

which Delvalle responded, "A below-guidelines sentence."  *Id.*  That

response quite appropriately prompted further inquiry by the

magistrate judge.  Delvalle immediately clarified that it was "[n]ot a

promise," and that he understood that a below-Guidelines sentence

was only "a big maybe," or, in other words, a "possibility."  *Id.*  Based

on this record, we agree with the district court that Delvalle's plea was

entered voluntarily—that is, free from force, coercion, or undisclosed

promises.

Acknowledging that there was no "formal promise,"

Appellant's Br. at 11, Delvalle nevertheless argues that his plea was

13

involuntary because it "was induced by" his "belief" or "expectation" that he would receive a below-Guidelines sentence, *id.* at 12. In this respect, he contends that his case is like *United States v. Gonzalez*, where we vacated a defendant's guilty plea and conviction after a defendant claimed that his counsel had "basically told him that he was guaranteed probation." 820 F.2d 575, 577 (2d Cir. 1987). But in *Gonzalez*, unlike the case at hand, the district court conducted no inquiry whatsoever during the Rule 11 colloquy into the voluntariness of the defendant's plea. *Id.* at 579–80. Afterward, at sentencing, defense counsel moved to be relieved as counsel based on the defendant's assertion that he was innocent and "pled guilty on the advice of his attorney." *Id.* at 577. The district court denied the motion and adjourned sentencing. *Id.* When the parties reappeared for sentencing, defense counsel renewed the motion to be relieved and moved, in the alternative, to withdraw the plea. *Id.* Defense counsel stated that the defendant informed him that the defendant

14

expected a sentence of probation, did not know at the time of entering his plea that imprisonment was a possibility, and did not recall his counsel telling him that he could go to prison. *Id.* The district court denied both motions and imposed a sentence that included a term of imprisonment. *Id.* On appeal, we vacated the defendant's guilty plea, explaining that "the absence of any inquiry at all on the subject" of voluntariness during the plea colloquy ran afoul of the requirement of "strict compliance with Rule 11." *Id.* at 578-79. Without such inquiry, we reasoned, the district court was unable "to dispel any belief a defendant may have that any promise or promise-like representation made to him by anybody is binding on the court." *Id.* at 579.

That is certainly not the case here because, as described above, the magistrate judge satisfied Rule 11 by making a thorough inquiry into the voluntariness of the plea; confirming with Delvalle that he had not received any promises regarding his sentence, beyond what

was laid out in the plea agreement; and making it clear that any sentencing recommendation was not binding on the court.

Indeed, it is well settled that a defendant's guilty plea is not involuntary simply because he has a mistaken expectation at the time of entering his plea of what his sentence will be, even if his expectation is based on his lawyer's erroneous prediction about what sentence the court will impose. For example, in *United States ex rel. LaFay v. Fritz*, defendant LaFay claimed that his counsel told him that the state judge promised a sentence of no more than five years of imprisonment and that, as a result, he believed that such a promise existed at the time of entering his plea. 455 F.2d 297, 298, 301 (2d Cir. 1972). The state judge imposed a sentence much longer than five years of imprisonment; dissatisfied, LaFay filed a habeas petition that challenged the voluntariness of his plea. *Id.* at 299–300. After a hearing, the district court found that the state judge had not made any promise to the defense counsel. *See id.* at 300-01. But it nevertheless

16

set aside the conviction on the ground that LaFay "believed reasonably" that such a promise had been made, where counsel testified that he had conveyed his "understanding or impression" that the judge would limit the sentence to five years. *Id.*

We reversed. As an initial matter, we confirmed the district court's finding that "neither the sentencing court nor the prosecution made any promise to defense counsel." *Id.* at 301. The only basis for LaFay's belief that there had been a judicial promise was defense counsel's communication to his client that he had a "feeling that the sentence would be no more than five years." *Id.* We then rejected what we described as the district court's "wholly subjective test, namely, LaFay's belief as to what his sentence might be at the time he entered his guilty plea." *Id.* Such a test was inappropriate even if LaFay's belief had been influenced by his lawyer's prediction as to what sentence the court would likely impose. "An erroneous sentence estimate by defense counsel does not render a plea

17

involuntary."  *Id.* at 302 (quoting *United States ex rel. Bullock v. Warden, Westfield State Farm*, 408 F.2d 1326, 1330 (2d Cir. 1969)).

Drawing on longstanding precedent, we pointed to the mischief that was likely to ensue if a defendant could withdraw his plea based on nothing more than a claim that his lawyer had "misled his client into being too hopeful" of a light sentence:

> If on so flimsy a basis as this, amounting, at least at the actual time of plea, to no more than counsel's hope for a suspended sentence, a plea of guilty may be withdrawn, it is obvious that an accused may safely indulge in a plea of guilt as a mere trial balloon to test the attitude of the trial judge, being reasonably secure in the knowledge that he can withdraw it without great difficulty.

*Id.* (quoting *United States v. Weese*, 145 F.2d 135, 136 (2d Cir. 1944)); *see also United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972) ("Although a claim frequently asserted is that the guilty plea was entered by the prisoner in the erroneous belief, induced by discussions with his lawyer, that he would receive a lesser sentence than that ultimately imposed or that he would be permitted to

18

withdraw his guilty plea, this has repeatedly been held insufficient to warrant the issuance of a writ.").  Accordingly, even if Delvalle's hope of a lighter sentence was based on overly optimistic predictions by his lawyer of what sentence the district court would impose, that hope does not undermine the voluntariness of his guilty plea.

Of course, things would be different if the defendant had actually received an undisclosed promise from the judge or the government.  *See, e.g., Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").  Likewise, if defense counsel had in fact misrepresented to the defendant that the judge had promised a particular sentence, and the judge then imposed a heavier sentence, the defendant's plea could be subject to vacatur as involuntary (and counsel would have been constitutionally ineffective).  *See Mosher v. Lavallee*, 491 F.2d 1346, 1348

19

(2d Cir. 1974). But neither situation is present here, where Delvalle acknowledged during the plea colloquy that he had received no promises, beyond those in the plea agreement, about what sentence he would receive.

## III.   Conclusion

In sum, we hold that the district court did not err by accepting Delvalle's guilty plea.

1. The district court fulfilled its obligations under Rule 11 by determining that Delvalle had not received any promises regarding his sentence beyond what was contained in his plea agreement; and

2. Delvalle's guilty plea was not involuntary simply because he had, at the time of entering his plea, a mistaken expectation that he would receive a lesser sentence than what the district court ultimately imposed.

Accordingly, we AFFIRM the judgment of the district court.